**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**John F. PUNTILLO, Defendant-Appellant.**

**No. 18613.**

United States Court of Appeals,
Seventh Circuit.

March 19, 1971.

Rehearing Denied April 19, 1971.

Bradley D. Steinberg, Chicago, Ill., for defendant-appellant.

David J. Cannon, U. S. Atty., Joseph P. Stadtmueller Asst. U. S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Before SWYGERT, Chief Judge, KILEY, Circuit Judge, and CAMPBELL, Senior District Judge.*

SWYGERT, Chief Judge.

John F. Puntillo, defendant-appellant, was indicted for violating 18 U.S.C. § 1952 [1] by traveling from Kenosha, Wisconsin, to Chicago, Illinois, with intent to carry on an illegal gambling enterprise in violation of the laws of the State of Wisconsin, and by thereafter performing acts in Wisconsin which facilitated his unlawful activity. After a verdict of guilty by a jury, the court imposed a fine and a prison sentence.

The defendant asserts four grounds for reversal of his conviction: (1) his motion for acquittal should have been granted; (2) evidence of his presence in Chicago on November 10, 1969 was improperly admitted; (3) the grant of immunity to a Government witness was improperly authorized; and (4) a fair trial was not afforded because the witness was allowed to claim his testimonial privilege in the jury's presence and because the jury was aware that the witness had been granted immunity.

Beginning on October 20, 1969 officers Donald Kenney and Ronald Herion of the Chicago Police Department kept a building located at 610 North Bishop Street, Chicago, under surveillance on four successive Monday evenings. The officers observed an identical occurrence on each occasion: a car would stop at 610 North Bishop about 9 p.m., packages would be unloaded, and later packages would be picked up by a number of people. On November 3, 1969 the officers saw an automobile with Wisconsin plates arrive at the Bishop Street address. The driver entered the building, returned with a package, and drove off. Officer Kenney trailed the automobile and observed the driver as he got out of the car at a nearby restaurant. The of-

---

* Judge William J. Campbell of the United States District Court for the Northern District of Illinois is sitting by designation.

1. This section provides, in pertinent part: (a) Whoever travels in interstate or foreign commerce * * * with intent to—

    *     *     *     *     *

    (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,

and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

(b) As used in this section "unlawful activity" means (1) any business enterprise involving gambling * * * offenses in violation of the laws of the State in which they are committed or of the United States. * * *

ficer then returned to 610 North Bishop and observed another person leave the building with a package that dropped on the street, spilling football parlay cards. On the following Monday, November 10, 1969, the defendant was arrested by officers Herion and Kenney at 610 North Bishop, and seventy thousand parlay cards were seized during the arrest. Officer Kenney testified that after seeing the defendant on November 10, he could identify the defendant as the same person who left 610 North Bishop with a package on November 3 and whom he later saw get out of an automobile at the nearby restaurant.

Government witness Frank Turk, a resident of Kenosha, Wisconsin, testified that the defendant also resided in Kenosha and was a fellow employee at the American Motors plant in that city. According to his testimony, Turk picked up football parlay cards at defendant's residence during the fall of 1968 and 1969, and defendant came to Turk's residence on each Saturday during that time to pick up cards which had been played and any monies wagered during the week. Turk received twenty-five percent of the bets placed by his efforts.

A special agent of the Federal Bureau of Investigation testified as an expert that one of the parlay cards distributed by Turk during the week of November 3 and one of the cards seized during the November 10 raid at 610 North Bishop were prepared from the same original art work.

■ The defendant contends the Government offered no proof that, as charged in the indictment, he traveled from Wisconsin to Chicago on November 3, 1969 or did anything on the following day which facilitated his illegal activity in Wisconsin. Though no direct evidence was introduced to prove either of these alleged occurrences, the defendant overlooks the application of the principle that circumstantial evidence and reasonable inferences drawn from proven facts

may substitute for direct evidence. The fact that the defendant was seen in Chicago on the evening of November 3 driving an automobile with Wisconsin license plates, when coupled with the additional fact that he lived in Kenosha, Wisconsin, was sufficient evidence from which the jury could reasonably infer that the defendant traveled interstate on or about the time specified in the indictment. Similarly, the jury could reasonably infer that the defendant was engaged in gambling in Wisconsin on November 4, 1969 from Turk's testimony that he picked up parlay cards at defendant's home on that day, particularly when such testimony is considered in light of the other evidence.[2]

There is no merit in defendant's additional contention that there was a fatal variance between the proof and the charge in that the jury was permitted to determine guilt on the basis of the events of November 8, when Turk turned over cards to the defendant, and November 10, when the latter was arrested in Chicago. The record, including the instructions and closing arguments, shows that the Government's evidence was directed to proving the specific charge described in the indictment. The jury could not have misapprehended that it was deciding guilt or innocence on any other basis.

■ The defendant further complains about the admission of evidence relating to his November 10 arrest in Chicago. This evidence was admissible to establish the identification of the defendant and his engagement in the business of gambling. Moreover, the evidence was so closely related both as to time and character to the specific offense with which the defendant was charged as to be clearly relevant.

Defendant's final contentions relate to the Government witness Turk's invocation of his testimonial privilege under the fifth amendment and his subsequently being granted immunity.

2. Later in his testimony, Turk said the cards were left between the doors of his home. This change in his testimony is immaterial to the issue.

Prior to Turk's taking the witness stand, Government counsel announced in chambers to the judge and defense counsel that Turk intended to plead the fifth amendment and the Government planned to request an order granting him immunity. Although defense counsel suggested taking sufficient testimony from the witness so as to permit his fifth amendment plea outside the presence of the jury, the judge overruled the suggestion. Thereafter, in open court and with the jury present, the witness invoked his fifth amendment privilege upon being asked whether he knew the defendant. After retiring to chambers, the court granted the witness immunity under the provisions of 18 U.S.C. § 2514. Thereafter the witness resumed the witness stand and testified extensively for the Government.

During its direct examination the prosecution brought out the fact that when the witness was first questioned by Federal Bureau of Investigation agents he denied his dealings with "football pools," giving as a reason, "Well, I was implicated, I didn't want to admit it." On cross-examination the following questions were then asked and the witness responded:

Q. Did you discuss the case with them [the F.B.I.]?

A. They wanted to know what was wrong because I invoked the fifth amendment at the hearing, the grand jury hearing.

Q. Did you discuss this case in your home?

A. No, we didn't discuss the case. They just came to tell I would be granted immunity.

Defense counsel's objection that the answer was unresponsive was overruled.

The defendant argues that the Government's case was unfairly bolstered in the minds of the jurors when they were allowed to witness Turk's invocation of his testimonial privilege and to hear his subsequent statement that he had been granted immunity. The problem presented when a witness invokes his fifth amendment privilege in the presence of the jury is not new. The Supreme Court in Namet v. United States, 373 U.S. 179, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963), after discussing several lower court decisions dealing with the subject, suggested two factors that are to be considered in determining error. The first factor is grounded "upon a concept of prosecutorial misconduct, when the Government makes a conscious and flagrant attempt to build its case out of inferences arising from the use of the testimonial privilege"; the second factor is based upon the idea that "in the circumstances of a given case, inferences from a witness' refusal to answer * * * [add] critical weight to the prosecution's case in a form not subject to cross-examination."

Neither of the factors mentioned in *Namet* are present in this case. The prosecution made no conscious or flagrant attempt to bolster its case as the result of the invocation by the witness of his testimonial privilege. In fact, it was the judge who insisted that a record of the witness' refusal to testify be made in the jury's presence. Moreover, the witness, after being granted immunity took the stand and testified. Consequently, no impermissible inferences could be drawn because the witness was not subject to cross-examination.

We are also convinced that no reversible error occurred when, on cross-examination, the witness Turk revealed to the jury that he had been granted immunity. The only request made at the time was that the answer relating to immunity be stricken from the record as being unresponsive to the question. No motion for a mistrial was made and if one had been made, we would hesitate to say that its denial was not within the sound discretion of the judge. In order to find error we would be required to speculate that the jury might have given credence to Turk's testimony because he had been granted immunity. But a counter speculation is equally valid; the jury, as a result of such knowledge, might have been less willing to believe the witness.

Error cannot be predicated on such elusive considerations.

 The trial court granted immunity to Turk on the basis of a request signed by Will Wilson, Assistant Attorney General in charge of the Criminal Division of the Department of Justice. The defendant argues that 18 U.S.C. § 2514 authorizes only the Attorney General to sign the application for the grant and that the statute does not permit a delegation of this authority. This precise question was presented in December 1968 Grand Jury v. United States, 420 F.2d 1201, 1203 (7th Cir.), cert. denied, Domenico v. United States, 397 U.S. 1021, 90 S.Ct. 1260, 25 L.Ed.2d 531 (1970). There we held a similar authorization signed by Assistant Attorney General Wilson was proper under the statute. We decline to yield to defendant's urging that we overrule our previous decision.

The judgment of conviction is affirmed.