MOORE, Plaintiff in error, vs. THE STATE, Defendant in error.

*March 24 — May 5, 1891.*

*Assault with intent to commit rape.*

To justify a conviction for an assault with intent to commit a rape, the evidence must show, not merely that the defendant intended to have sexual intercourse with the complaining witness, but that he intended to use whatever force might be necessary to overcome her resistance and accomplish his object.

ERROR to the Circuit Court for *Fond du Lac* County. The case is fully stated in the opinion.

For the plaintiff in error there was a brief signed by *E. W. Phelps,* attorney, and *Maurice McKenna,* of counsel, and the cause was argued orally by *Mr. Phelps.*

For the defendant in error there was a brief by the *Attorney General* and *J. M. Clancey,* Assistant Attorney General, and oral argument by *Mr. Clancey.*

CASSODAY, J. The plaintiff in error was convicted of having, on the evening of August 17, 1890, made an assault upon the complaining witness, Clara, with intent to commit the crime of rape. Upon that conviction he was sentenced to the state prison for the term of one year, under sec. 4383, R. S. The serious question presented is whether the evidence is sufficient to support the verdict.

The testimony of the complaining witness is manifestly colored, and to some extent contradictory; but she, in effect, admits that at the time named she was nineteen years of age, and made her home at her brother's on Greenwood street; that on the afternoon of the day named she was at a picnic in Ingram's grove, on Linden street, in Fond du Lac; that she started from there to go to her brother's; that about half past six she was overtaken by Moore on Linden street, between Tenth and Eleventh streets; that prior to that time she had no acquaintance with him, did not know his name, and had never seen him; that they walked and talked along together down to Twelfth street, about three blocks from her brother's; that they thus continued on Twelfth street to Main street; that, as the street-car came along, she expressed a regret that it did not pass her brother's house, so that she could go home on the street-car; that he then asked her to take a ride on the street-car; that she then told him she could buy the tickets at three cents apiece in a store near; that he then gave her twenty-

five cents, and told her to buy four tickets; that she went into the store and bought four tickets; that that was about a quarter past seven o'clock; that they walked and talked together until the street-car came; that they took the street-car, and rode north to Forest street; that then they went back to Stevens' restaurant; that he then asked her what she would have, and she told him she did not care whether he got peanuts or something else; that he bought some peanuts, and gave her some, and she ate them as they were walking along the street; that it was then about half-past seven, and the stores were lighted and open, and there were lots of people in the streets; that he went into a saloon and got a cigar,— taking her parasol with him; that she walked along, and then back to meet him, to get her parasol; that at that time she was afraid he would do something to her; that on Main street, and near the corner of Fourth street, he asked her if she ever drank beer, and she told him she had, but did not care for any that evening; that he then asked her to go back through the alley way at Pul's saloon, where nobody would see them, and drink a glass of beer, and pulled her along; that when they went into the alley he told her there was tar in there, and that she must be careful, or she would get her dress all tar; that she then held up her dress with both hands, and followed him into the alley to the back part of the saloon; that he went in and brought out two glasses of beer, gave her one, and she drank part of it; that she then went through that alley to Third street; that there were no lights in the alley; that he did not offer to hurt or do anything to her while there, except to kiss her, and she kissed him; that they walked along together to the next block on Main street; that he then spoke of their meeting again some time in the future; that she told him she supposed not; that they walked on Main street to Second street, and then down Main street to Western avenue, and then went down on Lin-

den street; that it was then about a quarter to nine o'clock
and dark, except a little light from the electric lights; that
there were lights in all the houses along that street, and they
were thick; that they could see a few people along on the
other side of the street; that when they got between Tenth
and Eleventh streets, opposite the picnic grove, where they
first met, he sat down, and made an excuse, saying he had
got something in his shoe, and asked her to sit down too;
that she did not want to; that she already thought some-
thing; that he pulled her clothes to sit down, and she had
to sit down, and sat there on the sidewalk with him three
or four minutes; that he put his arm around her, and kissed
her twice at that place; that she did not object to his kiss-
ing her, and that she kissed him; that her drawers were
open on the sides, and he put his other hand under her
clothes, and in the side of her drawers, and around in front
on her private parts; that just about that time somebody
went by on the other side of the street, and she thought
the person would see her, and so she tried to get away, and
did jump up, and ran about three blocks and a half, and
onto Greenwood street, which was a block and a half from
Linden street; that he there caught up with her and told
her to take her parasol, that he did not want it; that she
asked him why he had not thrown it into the fence corner,
and broken it all to pieces; that she had not previously
asked for it except when they were on Main street; that
he then took hold of her, and walked along with her about
a quarter of a block, and then asked her to sit down; that
he sat down, and wanted her to sit down, and pulled her,
and she sat down on his knees or his lap; that while sitting
there he kissed her three times, and she kissed him once;
that they were then on the sidewalk about on the line of
two houses,— one of which was lit up; that when she kissed
him there she was not afraid of him; that he then raised
her clothes, and put his hand inside her drawers, as he

had done before on Linden street, and told her what he wanted, and tried to have connection with her, and she told him she would not consent; that she was then afraid of him, and jumped up, and he got up, and held her tight, and tried to pull her down again, and tore her drawers, but she held onto the board fence, and told him to let go of her, and, when he failed to do so, she screamed three times; that he told her to stop, and threatened her if she did not stop; that he then let go of her, and she ran about a quarter of a block to a house where she was acquainted, and told what had occurred; that he at no time hurt her in any way, except her arm when he was trying to pull her away from the fence; that at no time that evening was she lying down on her back; that he never pushed her over and held her down flat on the sidewalk or on the grass or anywhere else.

Were the facts thus admitted by the complaining witness such as to warrant the conviction of an assault upon her with intent to commit the crime of rape? There is testimony tending to prove that his purpose was to have connection with her. It is conceded that he so intended if he could obtain her consent. The final result indicates that she never really intended to give such consent. Her conduct, under the circumstances stated, however, was well calculated to invite importunities. He appears to have been excessively importunate, especially at the fence; but the evidence is not such as to warrant a verdict that he was guilty of an assault upon her with intent to carnally know and ravish her by force and against her will. This is the essence of the offense. *Hull v. State*, 22 Wis. 580; *Croghan v. State*, 22 Wis. 445. To render him guilty of such an offense the evidence must show beyond a reasonable doubt that the accused not only intended to have sexual intercourse with the complaining witness, but that he intended to use whatever force might be necessary to overcome her resistance

and accomplish his object.  *State v. Kendall,* 73 Iowa, 255;
*Skinner v. State,* 28 Neb. 814.   The threats made by the
accused were manifestly to prevent her from making a
noise, and thus avoid their discovery.   There is no evidence
of any threat made for the purpose of compelling her sub-
mission through fear.   Nor is there any evidence that he
intended to use whatever force was necessary to overcome
her resistance and accomplish his purpose.

*By the Court.*— The judgment of the circuit is reversed,
and the cause is remanded for a new trial.   The warden of
the state prison will surrender the plaintiff in error to the
sheriff of Fond du Lac county, who will hold him in custody
until he shall be discharged or his custody changed by due
process of law.