EDWARDS, Plaintiff in error, v. STATE, Defendant in error. [Two appeals.]

*Nos. State 115, 116. Argued February 6, 1970.—Decided March 3, 1970.*

(Also reported in 174 N. W. 2d 269.)

For the plaintiff in error there were briefs by *Irving D. Gaines,* attorney, and *Gaines & Saichek* and *David A. Saichek* of counsel, all of Milwaukee, and oral argument by *David A. Saichek.*

For the defendant in error the cause was argued by *Theodore J. Hodan,* assistant district attorney of Milwaukee county, with whom on the brief were *Robert W. Warren,* attorney general, and *E. Michael McCann,* district attorney.

ROBERT W. HANSEN, J. Ordinarily, the person charged with operating a motor vehicle without the owner's consent,[1] is the person who took the vehicle from the owner,[2] or whose use, while originally with the owner's consent, was subsequently illegal.[3] However, the statutory language "intentionally takes and drives any vehicle without the consent of the owner" does not require that the driver of the stolen vehicle be the person who actually took the vehicle from the rightful owner.[4] Here the defendant was charged with intentionally [5]

---

[1] ". . . Whoever intentionally takes and drives any vehicle without the consent of the owner may be fined not more than $1,000 or imprisoned not more than 5 years or both." Sec. 943.23, Stats.

[2] *See Banas v. State* (1967), 34 Wis. 2d 468, 149 N. W. 2d 571, certiorari denied, 389 U. S. 962, 88 Sup. Ct. 346, 19 L. Ed. 2d 373.

[3] *See Bass v. State* (1965), 29 Wis. 2d 201, 138 N. W. 2d 154.

[4] *State v. Robbins* (1969), 43 Wis. 2d 478, 481, 168 N. W. 2d 544.

[5] "(3) 'Intentionally' means that the actor either has a purpose to do the thing or cause the result specified or believes that his act, if successful, will cause that result. In addition, except as provided in sub. (6), the actor must have knowledge of those facts which are necessary to make his conduct criminal and which are set forth after the word, 'intentionally.'" Sec. 939.23 (3), Stats.

taking and driving an automobile but not charged with the initial taking from the true owner. While the state need not claim or prove that the defendant was the person who initially took the car from the true owner, it is required to prove that, in addition to driving the stolen car, the defendant had knowledge that he was operating the car without the owner's consent. To prove such knowledge or intent, the state, as would be usual in such cases, was forced to rely upon circumstantial evidence.

The sole claim made by the defendant is that the circumstantial evidence adduced at the trial is not sufficient to support the conviction.

If the case had ended or this review were to stop with the presentation of the case for the state, it would be difficult to dispute such claim or contention. The state called only two witnesses. One, an employee of Nodell Cadillac Company, testified that the car had been stolen from their used car lot, had been reported missing, and that the car which the defendant was driving was the stolen car. The other state witness, the arresting officer, testified that he had observed the defendant driving a red 1965 Oldsmobile, that he stopped the defendant and asked to see his driver's license. The defendant fumbled through his pockets, finally admitting he did not have a driver's license. The officer checked the status of the car and discovered that it was the car reported stolen by Nodell Cadillac. The officer confronted the defendant with this information, and the defendant stated that he had received the car from his uncle. The defendant refused to tell the officer where the uncle lived, or to take him to where the uncle lived.

An inference hardly favorable to the defendant can be drawn from his uncooperativeness in refusing to tell where the uncle from whom he claimed to have gotten the car resided. However, standing alone, this certainly

would not be sufficient to warrant a finding that the defendant had knowledge that the automobile he was driving was a stolen vehicle, required for a finding of intentional taking and driving without the owner's consent.

The defendant took the stand to testify that he had received the stolen automobile from his twenty-one-year-old uncle, W. C. Wells; that he had driven it on two occasions; that W. C. Wells had told him that he had purchased the auto; that defendant did not ask the uncle where he had purchased it, how much he had paid for it or who the prior owner had been.

The twenty-one-year-old uncle, W. C. Wells, took the stand to testify that during the months of June, July and August of 1968, he lived at 2029A West Juneau Street in the city of Milwaukee, and owned two automobiles, a 1960 Pontiac and a 1959 Oldsmobile, registered in the name of a "Charles Brown" and with Grafton, Wisconsin, given as the place of residence. Questioned about the 1965 Oldsmobile stolen from Nodell Cadillac, Wells testified that he had driven this car on only two occasions, once from his residence to a department store and once on a trip to Mississippi, on which the defendant and others in the family group went along. The driving on the excursion to the southern state was, Wells stated, done by him and the defendant's brother, Robert Edwards. The vehicle bore Wells' license plate: W–53192. The vehicle had a tape machine, belonging to Wells' brother, James Black, mounted inside.

Wells further testified that about a month prior to the trip to the South the defendant's brother, Robert Edwards, also Wells' roommate, brought the stolen car to their residence, adding: ". . . he told me . . . he robbed a Big Boy's on Sherwood and bought a '65 Riviera. And then Henry [the defendant] wrecked that, and he came in with this Olds," and "he had a '62, I think, Cadillac convertible," and "he told me that it

was a loaner" and "then he came over with" an "Olds-mobile '65 Starfire," which he said he got "from the insurance of the Riviera." Wells testified that the defendant would come over to visit them at 2029A West Juneau Street almost every day. Finally, Wells testified that defendant's brother admitted that he had stolen the car, using these words to do so:

"A. Well he told me that Henry [the defendant] and him got into an argument about whose car this was, this is what he told me. And he didn't want Henry [the defendant] to drive the car. He says, Henry snatched the keys and jumped in the car, and Robert was in front of the car, and he ran Robert over and he [the defendant] left with the car. And I came along and Robert said that Henry had took the car, and the car was stolen, and Henry didn't have any driver's license."

The defendant's brother, Robert Edwards, took the stand to testify that he was in the House of Correction when the auto involved was reported missing; that the uncle, W. C. Wells, had told him that he, the uncle, had stolen the car; that he lived with Wells but did not ask him where he got his cars. The brother testified that he first observed the stolen automobile in "the latter part of July, around the middle of the last part somewhere, around up in there" in back of the house at 2029A West Juneau Street. The defendant's mother, Nellie Harris, a sister of uncle W. C. Wells, testified that the first time she saw the stolen vehicle it was being driven by another of her brothers, Johnny Allan Wells, age seventeen years. She stated that she asked him who owned it and he stated it belonged to a man named Esau. Asked whether she questioned her brother Johnny about the identity of Esau, she testified, "No, but I teased him about it. He said it belonged to Esau, like the Esau that's in the Bible." Another uncle of defendant, James Black, a brother of W. C. Wells, testified that he had observed the stolen automobile at 2029A

West Juneau, that he had loaned a tape playing machine to be installed in "some car" that he had told defendant's mother, "I think once I told her it was W's car, then I told her it was some guy's, Esau or somebody's—Esau or somebody's car."

In determining the permissible inferences to be drawn from the evidence presented by the relatives at the defendant's trial, there is reason to recall the following statement by a distinguished jurist, Judge LEARNED HAND, dealing with the inferences as to conduct which may be drawn from various circumstances to a moral certainty. Judge HAND wrote:

". . . It is true that the carriage, behavior, bearing, manner and appearance of a witness—in short, his 'demeanor'—is a part of the evidence. The words used are by no means all that we rely on in making up our minds about the truth of a question that arises in our ordinary affairs, and it is abundantly settled that a jury is as little confined to them as we are. They may, and indeed they should, take into consideration the whole nexus of sense impressions which they get from a witness. This we have again and again declared, and have rested our affirmance of findings of fact of a judge, or of a jury, on the hypothesis that this part of the evidence may have turned the scale. *Moreover, such evidence may satisfy the tribunal, not only that the witness' testimony is not true, but that the truth is the opposite of his story; for the denial of one, who has a motive to deny, may be uttered with such hesitation, discomfort, arrogance or defiance, as to give assurance that he is fabricating, and that, if he is, there is no alternative but to assume the truth of what he denies.*" [6] (Emphasis supplied.)

Actually, while the superior opportunity of the trier of fact to observe matters such as demeanor, appearance, and manner of testifying is to be remembered, here the words used by the various witnesses are a firm basis for certain inferences. It is to be inferred that the automobile in question was a stolen vehicle, being operated with-

---

[6] *Dyer v. MacDougall* (2d Cir. 1952), 201 Fed. 2d 265, 268, 269.

out the consent of the owner. It is the only possible inference from the testimony that the automobile was at the premises of defendant's uncle for a considerable period of time. It is the only possible inference that it was used at various times for various purposes by various members of the family group, including the defendant, and including the trip on which he and others traveled to a distant state. It is a permitted inference that the defendant and his brother got into an argument about whose car the stolen vehicle was, and that the defendant, claiming it to be his, snatched the keys and drove it away. It is a reasonable inference that the defendant, his brother, with whom he argued about whose car it was, and others who testified, knew that it was a stolen car. It is clear that the trial court drew such inferences for it concluded, we would say with good reason and sound basis, that:

"*The Court:* There is no doubt in my mind, whatsoever, that the defendant knew that the vehicle was stolen, and that he knew that he was operating it without the true owner's consent. And I find him guilty as charged. I emphasize that he is not here charged with stealing the vehicle. The issue is whether he was operating it intentionally without the owner's consent. And there is no doubt in my mind but what he knew that this vehicle was stolen."

In fact, defendant's trial counsel acknowledged the reverse impact of certain testimony and the persuasiveness of the fact situation presented when he stated to the trial court in argument:

"Well, Your Honor, I will agree with the district attorney to some degree that there are circumstances here which might tend to show that maybe Mr. Henry Lee Edwards did know it was stolen at the time he was stopped. But there has been nothing shown here to tie up that he took the car . . . ."

It is true that neither testimony nor the fact situation revealed link the defendant to the actual theft of the

automobile involved. However, as the trial court correctly made clear, the defendant was not charged with stealing the car. He was charged and found guilty of operating without the owner's consent an automobile that he knew to be stolen. The finding of guilt is sufficiently supported by the evidence adduced at the trial. The conviction stands.

*By the Court.*—Judgment and order affirmed.