ADAMS, Plaintiff in error, v. STATE, Defendant in error.

*No. State 39. Submitted under sec. (Rule) 251.54 February 1, 1973.—Decided February 27, 1973.*
(Also reported in 204 N. W. 2d 657.)

/

For the plaintiff in error the cause was submitted on the brief of *William A. Jennaro,* Legal Aid Society of Milwaukee.

For the defendant in error the cause was submitted on the brief of *Robert W. Warren,* attorney general, and *Robert D. Martinson,* assistant attorney general.

WILKIE, J. Three issues are presented by this review:

1. Do the defendant's acts unequivocally demonstrate his intent to commit the crime of rape?

2. Do the defendant's acts unequivocally demonstrate that he intended to overcome the utmost resistance of the complainant?

3. Do the defendant's acts unequivocally demonstrate his intent to overcome the utmost resistance of complainant but for the intervention of another person or some other extraneous factor?

*Intent to rape.*

Secs. 944.01 (1) and 939.32 (2), Stats., combine to establish the crime of attempted rape.[1] These statutes were analyzed by this court in *Oakley v. State* as requiring:

". . . (1) The male must have the intent to act so as to have intercourse with the female by overcoming or preventing her utmost resistance by physical violence, or overcoming her will to resist by the use of threats of imminent physical violence likely to cause great bodily harm; (2) the male must act toward the commission of the rape by overt acts which demonstrate unequivocally, under all the circumstances, that he formed the intent to rape and would have committed the rape except for the intervention of another person or some other extraneous factor."[2]

---

[1] Sec. 944.01 (1), Stats., provides: "Any male who has sexual intercourse with a female he knows is not his wife, by force and against her will, may be imprisoned not more than 30 years."

Sec. 939.32 (2), Stats., provides: "(2) An attempt to commit a crime requires that the actor have an intent to perform acts and attain a result which, if accomplished, would constitute such crime and that he does acts toward the commission of the crime which demonstrate unequivocally, under all the circumstances, that he formed that intent and would commit the crime except for the intervention of another person or some other extraneous factor."

[2] (1964), 22 Wis. 2d 298, 306, 125 N. W. 2d 657. *See also: Berg v. State* (1969), 41 Wis. 2d 729, 735, 736, 165 N. W. 2d 189; *Huebner v. State* (1967), 33 Wis. 2d 505, 520, 147 N. W. 2d 646; *Taylor v. State* (1923), 180 Wis. 577, 583, 193 N. W. 353.

The requisite intent in an attempted rape case may be inferred. The chief reason for this, we stated in *Le Barron v. State*,[3] is "the sole evidence of intent in attempted rape cases is almost always confined to the overt acts of the accused."

The essential acts of the defendant in the instant case include the following: (1) His statement to complainant as he threw her on the floor, "I don't really want the room, I want you because I never had a white woman before;" (2) his forcibly pulling complainant's shorts and undergarments to her knees; (3) his insertion of a finger into complainant's vagina; (4) his threat to the child in the event complainant should cry out; (5) his renewed struggle after throwing the child onto a couch; and (6) his belt buckle being undone.

The first question for this court's determination is whether these acts are sufficient for a trier of fact to have concluded defendant intended to have sexual intercourse with his victim by force and against her will.

As for the question of intent, *Le Barron v. State* is controlling. In *Le Barron* this court concluded that the following acts were sufficient to show the defendant's intent to commit rape:

". . . (1) He threatened complainant that he would kill her if she refused to cooperate with him; (2) he forced complainant into the shack and against the wall; and (3) he stated, 'You know what else I want,' unzipped his pants, and started pulling up her skirt. . . ."[4]

The only distinction between the situation presented in *Le Barron* and here is that in *Le Barron* the defendant had unzipped his pants whereas here he had only undone his belt buckle. This, of course, is no real distinction and we are satisfied that the acts complained of here more

---

[3] (1966), 32 Wis. 2d 294, 298, 299, 145 N. W. 2d 79.

[4] *Id.* at page 299.

than sufficiently indicate defendant's intent to commit rape and not some other perversion. The defendant theorized that his acts only demonstrated an intent to commit some sort of antisocial conduct but not necessarily rape. We think this argument unpersuasive. This court has recently stated:

". . . On appeal this court is not concerned with the evidence which might support other theories of the crime, it is concerned only with ascertaining whether the trier of fact could, acting reasonably, exclude these other theories and make findings supporting the guilt of a defendant." [5]

This rule applies equally well to the proof of intent. Here, the trial court, acting reasonably, was able to exclude defendant's alternative theories of intent.

*Intent to overcome complainant's utmost resistance.*

Defendant argues that he did not perform acts which unequivocally demonstrate his intent to have intercourse with complainant over her utmost resistance. As we have observed, the crime of attempted rape necessitates "intent to act so as to have intercourse with the female by overcoming or preventing her utmost resistance by physical violence . . . ." [6] This rule was stated very early by this court in *Moore v. State,*[7] a case involving the predecessor to the crime of attempted rape—assault with intent to commit rape. In *Moore* it was held:

". . . To render him guilty of such an offense the evidence must show beyond a reasonable doubt that the accused not only intended to have sexual intercourse with the complaining witness, but that he intended to use

[5] *State v. Lindsey* (1972), 53 Wis. 2d 759, 768, 193 N. W. 2d 699.

[6] *Oakley v. State, supra,* footnote 2.

[7] (1891), 79 Wis. 546, 48 N. W. 653.

whatever force might be necessary to overcome her resistance and accomplish his object." [8]

In *Moore* the court reversed the lower court's conviction as insufficiently proving the requisite intent to overcome her utmost resistance. The only physical contact in *Moore* amounted to the defendant's failing to release the hold he had on the complainant's underclothes, such hold having been achieved without an undue amount of distress earlier in the evening, as she became frightened and jumped up. The purpose of the threat, according to the court, was solely designed to keep her from making an undue amount of noise. The supreme court concluded the threats were not designed to compel her submission through fear.

In *Skulhus v. State,* also a case involving the old assault-with-intent-to-rape statute, this court found the following scene sufficient to conclude the defendant had intended to overcome the complainant's utmost resistance:

". . . Upon that [a suggestion that he take her measurements which was refused] he advanced towards her with a cord in his hands, grabbed her, attempted to take suggestive liberties with her person, commanded her to come into the bedroom, and forced her nine feet in that direction. They struggled some three minutes, resulting in his getting inside the bedroom and trying to pull her in. Thereupon, despairing of breaking his hold by pulling, or otherwise making him desist, she struck him and screamed. He did not desist immediately upon being struck but did and ran away when she screamed." [9]

The court stated defendant's ceasing the struggle at the complainant's first outcry was not sufficient evidence "to create a reasonable doubt as to what his real purpose was . . . ." [10]

---

[8] *Id.* at pages 550, 551.

[9] (1915), 159 Wis. 475, 476, 150 N. W. 503.

[10] *Id.* at page 479.

In *Le Barron v. State* the defendant ceased his struggle after the complainant advised him she was pregnant.[11] This court concluded:

". . . The fact, that he desisted from his attempt to have sexual intercourse as a result of the plea of complainant that she was pregnant, would permit of the opposite inference. However, such desistance did not compel the drawing of such inference nor compel, as a matter of law, the raising of a reasonable doubt to a finding that defendant had previously intended to carry through with having intercourse by force and against complainant's will."[12]

The common theme running through these cases and others is that the defendant must have utilized a degree of force in order to sufficiently establish his intent to overcome a complainant's utmost resistance. In the instant case more than enough force was utilized by the defendant, over a period of ten minutes, to indicate the defendant's requisite intent to overcome complainant's utmost resistance.

*But for the intervention of another person or some other extraneous factor.*

The final question to be determined is whether the vigor of the complainant's defense here to the defendant's attack, including a well-placed kick in the mouth, was a valid "extraneous factor" within the contemplation of sec. 939.32 (2), Stats., so as to supply one of the essential requirements for the crime of attempted rape. If the defendant had ceased his action (which action indicated he intended rape) at the time the complainant's small daughter began to cry, the commission of the crime might be deemed to have proceeded "except for the intervention of another person." However, after the little

---

[11] *Supra*, footnote 3, at page 299.
[12] *Id.*

girl cried, the defendant threw her aside and took further action along the lines of his original intent. It was only when the complainant then resisted further to the point where she actually kicked the defendant that he dropped his attack and voluntarily left the premises. The "extraneous factor" of sec. 939.32 (2) contemplates some circumstance which is beyond the control of the defendant.[13] In *State v. Damms* [14] this court found a sufficient attempt to murder but for an extraneous factor in the defendant's pointing an unloaded pistol at his wife's head and pulling the trigger. So also in *Boyles v. State,*[15] this court held a sufficient armed robbery had occurred in the defendant's stating to complainant "Give me that sack," and his reaching into his coat pocket. The extraneous factor in *Boyles* was the defendant's inability to pull the gun out of his pocket and the complainant's running into a nearby tavern for safety. In the words of this court:

". . . The defendant did not abandon his efforts but he was prevented from successfully carrying out the crime by circumstances beyond his control."[16]

As applied to the crime of attempted rape, the sufficient extraneous factor in *Le Barron v. State* was the complainant's plea of pregnancy.[17]

We are satisfied here that the resistance offered by the complainant constituted a valid extraneous factor within the contemplation of sec. 939.32 (2), Stats.

*By the Court.*—Judgment affirmed.

---

[13] *See e.g., Berg v. State, supra,* footnote 2, at page 735 (impotency) ; *Huebner v. State, supra,* footnote 2, at page 520 (moral strength of child) ; *Taylor v. State, supra,* footnote 2, at page 582 (arrival of eight-year-old child).

[14] (1960), 9 Wis. 2d 183, 190, 100 N. W. 2d 592.

[15] (1970), 46 Wis. 2d 473, 175 N. W. 2d 277.

[16] *Id.* at page 476.

[17] *Supra,* footnote 3, at page 300. *See also: Johnson v. State* (1927), 192 Wis. 22, 211 N. W. 668.