JAWORSKI, Plaintiff in error, v. STATE, Defendant in error.

*No. 75–330–CR. Submitted on briefs September 14, 1976.—*
*Decided October 19, 1976.*
(Also reported in 246 N. W. 2d 137.)

For the plaintiff in error the cause was submitted on the brief of *Howard B. Eisenberg,* state public defender, and *Alvin E. Whitaker,* assistant state public defender.

For the defendant in error the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *William L. Gansner,* assistant attorney general.

CONNOR T. HANSEN, J.   We have concluded that a new trial should be ordered in this case on the ground the trial judge abused his discretion in denying plaintiff in error's motion for a new trial.   In view of this conclusion, we do not reach the question whether the evidence, viewed in a light most favorable to the State, was sufficient to prove plaintiff in error's guilt beyond a reasonable doubt.[1]

The victim in this case was a twelve year old girl.   She testified that plaintiff in error took her to the basement of an apartment building on the pretext that they were going to an apartment to drink beer.   He put a mattress on the basement floor and forced her down upon it, face up.   He placed one of his legs over both of hers.   She was screaming.   He struck her several times in the face to make her be quiet.   She was wearing a pair of red shorts and a white top with short sleeves.   He pulled the top off, undid her bra, and began to suck her right breast.   Next he put his hands in the waistband of her shorts, down to his thumbs.   This caused her shorts to move down slightly.   She asked him, "Will you kill my father?"   Whereupon, he withdrew his hands from her shorts.   Apparently hearing something, he got up and went to the basement door.   She attempted to run away, but he caught her.   He forced her back down on the mattress and began to suck her breast again.   She heard a man's voice upstairs and plaintiff in error got up and went to the door again.   He came back and dragged her to another part of the basement where he made her sit on something and began to suck the breast again.   At this point a police officer appeared on the scene who was joined shortly by his partner.   Plaintiff in error began to fight with one of the officers.   In the course of the struggle, plaintiff in error was shot.

Plaintiff in error testified that the victim had agreed to perform oral intercourse on him in exchange for $10, which he paid her.   He denied putting his hands in her

[1] *Lock v. State* (1966), 31 Wis.2d 110, 142 N.W.2d 183.

shorts. He denied any intention to have sexual intercourse with her. He testified that the arresting officer took the $10 payment from the victim and put it back in his wallet. Moreover, an investigating policewoman made a report of a statement taken from the victim, in the course of which it was represented that the victim stated plaintiff in error gave her $10. The policewoman testified this was a typographical error.

Prior to the commencement of the trial, and again at the close of the State's case, the prosecutor moved to file an amended information on a reduced charge. These motions were opposed by the trial counsel for plaintiff in error, and were denied by the trial judge.

The charge in this case was attempted rape. The State was required to show that plaintiff in error had done acts toward the commission of the crime of rape which demonstrated unequivocally under all the circumstances, that he intended to perform the acts, constituting the crime and would have done so but for the intervention of another person or some other extraneous factor.[2] Plaintiff in error argues that the evidence does not show any overt acts on his part which demonstrate unequivocally that he intended to have sexual intercourse with the victim. The State argues that the totality of the plaintiff in error's conduct demonstrates such an intent. The totality of the circumstances is the standard under which the conduct and acts of the plaintiff in error are to be judged. We do not, however, reach the evidentiary question as we grant a new trial on the grounds that the trial court erred in not allowing the prosecution to file an amended information on a reduced charge.

It is not necessary to move for a new trial in order to preserve errors when the trial has been held to the court sitting without a jury.[3] Therefore, it was not necessary

---

[2] Sec. 939.32(2), Stats.

[3] Sec. 974.02(5), Stats.

to make the new trial motion in order to preserve the claim of insufficiency of the evidence to convict. The test on review of denial of a motion for a new trial is whether the trial judge abused his discretion.[4]

We agree with the trial judge that plaintiff in error's conduct was despicable and reprehensible. However, we are persuaded that in deciding the motion for new trial the trial judge should have given more consideration than he did to the fact that the prosecutor demonstrated his own doubts as to the evidence by moving to amend the information. Accordingly, we reverse and remand for a new trial. In this case, the State should have been permitted, if it so elected, to amend the information to a more appropriate charge.

*By the Court.*—Judgment vacated. Order reversed and cause remanded for further proceedings consistent with the opinion.

ROBERT W. HANSEN, J. *(dissenting).* The trial court found this defendant, a 26-year-old male, guilty of the crime of attempted rape[1] of a 12-year-old girl. Plaintiff in error, hereinafter referred to as defendant, claims the evidence is insufficient to support such finding of guilt beyond a reasonable doubt.

Given such challenge to the sufficiency of the evidence, the issue on appeal becomes ". . . whether this court

---

[4] *White v. State* (1970), 45 Wis.2d 672, 173 N.W.2d 649.

[1] *See:* Sec. 944.01 (1), Stats., providing: "(1) Any male who has sexual intercourse with a female he knows is not his wife, by force and against her will, may be imprisoned not more than 30 years." And, sec. 939.32 (2), Stats., providing: "An attempt to commit a crime requires that the actor have an intent to perform acts and attain a result which, if accomplished would constitute such crime and that he does acts toward the commission of the crime which demonstrate unequivocally, under all the circumstances, that he formed that intent and would commit the crime except for the intervention of another person or some other extraneous factor."

can conclude the trier of facts could, acting reasonably, be so convinced by evidence it had a right to believe and accept as true."[2] Such evidence is to be viewed ". . . in the light most favorable to the finding."[3] Evidence in this record which the trial court had a right to believe and accept as true includes the following:

- Defendant took the 12-year-old victim of his assault to a deserted basement storage area of an apartment building.
- Defendant "grabbed her and they began to struggle."
- Defendant "forced her down on the mattress and held her there with his hand on her chest and neck and struck her several times."
- Defendant "[a]s she continued her struggle, . . . removed her blouse and bra and kissed her mouth and her breast."
- Defendant "was able to grab her when she tried to leave," and "returned her to the mattress, told her to shut up or he would kill her and again put his mouth to her breast."[4]
- Defendant placed one of his legs over hers while both lay prone on the mattress, the victim on her back, trying unsuccessfully to get up.
- Defendant "then stuck his hand under the waistband of her shorts, 'part of the way,'" and succeeded in pulling them down a little ways.[5]
- Defendant was interrupted when "a policeman appeared and the defendant was subdued and arrested."

---

[2] *Bautista v. State* (1971), 53 Wis. 2d 218, 223, 191 N.W. 2d 725.

[3] *Id.* at page 223.

[4] The complaining witness testified that she screamed for help repeatedly during the assault, and her testimony as to screaming was corroborated by a first-floor resident in the apartment house who testified that she had heard a frightened female voice calling for help several times from the basement before the police arrived.

[5] An in-court demonstration was made by the victim to show how much of defendant's hands had gone under the edge of her panties, and, according to this demonstration, defendant had inserted his hands up to his thumbs, succeeding in pulling the panties down "a little ways."

The quoted portions of the above summary of the evidence are taken from defendant's own statement of the facts as contained in his brief on appeal.[6] His brief concedes that his was an assault upon a 12-year-old victim for the purpose of sexual gratification,[7] but contends that an intent to have sexual intercourse was not unequivocally established. The writer disagrees, as did the trial court. Our court has made clear that: "Reasonable inferences drawn from the evidence can support a finding of fact. . . ."[8] The defendant did not tell the young girl he was going to have an act of sexual intercourse with her, but here actions speak louder than words. His every act, from forcing her down on the mattress to putting his hands in her panties and pulling them down "a little ways" supports the inference, reasonable under these circumstances, that he intended to have an act of sexual intercourse with her. The test, we have held, is whether, from the facts in this record, the trial court ". . . could infer beyond a reasonable doubt from these overt acts of the defendant that he intended to have sexual intercourse with defendant by force and against her will."[9] Here that test is met. The trial court could so infer.

Defendant maintains this record permits an alternative inference, to wit, that this defendant intended to force his victim to perform an act of fellatio or oral intercourse

[6] *See:* Defendant's brief, pages 4, 5.

[7] *Id.* at pages 5, 6, defendant conceding: "The evidence in this case establishes that [name of victim] was sexually assaulted by the defendant, that she resisted the defendant's acts, and that her resistance was overcome by force. It is also clear that by his acts the defendant intended to obtain sexual gratification." *See also: Id.* at page 8, the defendant describing his acts as "violent and reprehensible conduct toward a child."

[8] *Bautista v. State, supra,* footnote 2, at page 223.

[9] *Le Barron v. State* (1966), 32 Wis. 2d 294, 299, 145 N.W. 2d 79.

upon him.[10] There are exactly three things wrong with this contention. The first is that the only reference to any act of oral intercourse is in the oral testimony of the defendant himself. The trial court found the defendant to be a "contemptuously incredible witness." Unless we are to set aside the trial court's finding that defendant's testimony is incredible as a matter of law, there is no reference to fellatio in this record. If we do not set aside such finding of incredibility, a reverse impact is created with negative inferences properly drawn from discredited testimony.[11] The victim denied both any talk about fellatio and any receipt of $10 from defendant. Thus there remains only a question of credibility for the trier of fact —even without a finding of incredibility as to defendant's testimony.[12] The second thing wrong with the claim

[10] Defendant's Brief, page 8, stating: "Jaworski's actions are entirely consistent with his admitted intention to force the victim to perform fellatio."

[11] *See: Edwards v. State* (1970), 46 Wis. 2d 249, 255, 174 N.W. 2d 269, dealing with "the reverse impact" of discredited testimony, quoting and following *Dyer v. MacDougall* (2d Cir. 1952), 201 Fed. 2d 265, 268, 269, Judge LEARNED HAND there holding: " '. . . It is true that the carriage, behavior, bearing, manner and appearance of a witness—in short, his "demeanor"—is a part of the evidence. The words used are by no means all that we rely on in making up our minds about the truth of a question that arises in our ordinary affairs. . . . *Moreover, such evidence may satisfy the tribunal, not only that the witness' testimony is not true, but that the truth is the opposite of his story; for the denial of one, who has a motive to deny, may be uttered with such hesitation, discomfort, arrogance or defiance, as to give assurance that he is fabricating, and that, if he is, there is no alternative but to assume the truth of what he denies.' "* [Emphasis supplied in Edwards.]

[12] *See: Bautista v. State, supra,* footnote 2, at page 223, this court holding: "The credibility of the witnesses and the weight of the evidence is for the trier of fact. In reviewing the evidence to challenge a finding of fact, we view the evidence in the light most favorable to the finding."

of error is that, on appeal, we do not deal with alternative theories of the crime, but with the reasonable basis for finding a defendant guilty of the crime charged.[13] And, as we have held, ". . . if more than one reasonable inference can be drawn from the evidence, the inference which supports the finding is the one that must be adopted."[14] Here the inference drawn by the trial court supports its finding, and that is the end of appellate inquiry.

The third thing wrong with the claim that the facts here are consistent with a claimed intention of the defendant to force the victim to perform an act of fellatio upon him is that they are not. Where the defendant placed the mattress (on the floor) ; where he placed the girl (on the mattress on her back) ; where he placed himself (alongside her on the mattress) ; where he placed his leg (over hers to hold her down on the mattress) ; where he placed his mouth (on her breast) ; and where he placed his hands (inside her panties, pulling them down a little ways)—he made evident that the target of his sexual assault was below her waist, not above it. The position taken by the defendant on this appeal is not supported by the position taken on the mattress in the darkened basement. The trial court was entirely justified in finding beyond a reasonable doubt that an act of sexual intercourse, not an act of fellatio performed upon him, was here intended by this defendant.

Following trial to the court, defendant made two separate and distinct motions. One was for a reduction

---

[13] *Adams v. State* (1973), 57 Wis. 2d 515, 520, 204 N.W. 2d 657, this court quoting and following *State v. Lindsey* (1972), 53 Wis. 2d 759, 768, 193 N.W. 2d 699, holding: " '. . . On appeal this court is not concerned with the evidence which might support other theories of the crime, it is concerned only with ascertaining whether the trier of fact could, acting reasonably, exclude these other theories and make findings supporting the guilt of a defendant,' " and, in *Adams*, adding: "This rule applies equally well to the proof of intent."

[14] *Bautista v. State, supra,* footnote 2, at page 223.

of sentence, which the trial court properly denied, the trial court's decision here reflecting an entirely proper exercise of sentencing discretion.[15] The second was for dismissal or new trial, based solely on the claim the evidence was not sufficient to prove the defendant guilty of the crime of attempted rape.[16] This motion for new trial, in a trial to the court, did no more than ask the court to rule again on the sufficiency of the evidence to convict. With nothing different in the record and no claim of newly discovered evidence, the determination of the adequacy of the evidence was the same on the motion for new trial as it had been in the decision finding the defendant guilty. It is true the prosecutor here twice moved to reduce the charge to a lesser crime, the trial court denying both such motions. However, the record clearly reveals that the defendant, by trial counsel, opposed and argued against the granting of either motion. The defendant cannot now be heard to claim entitlement to reversal or even a discretionary reversal in the interest of justice, based on the trial court's denial of motions which the defendant himself argued should be denied. Thus the only ground stated in the motion for new trial was insufficiency of the evidence. If the evidence was sufficient to sustain the conviction, as the writer submits it was, there is no basis for finding an abuse of discretion in denying a motion for new trial based solely on a claim of insufficiency of evidence. The writer would affirm the conviction of this defendant on the charge of attempted rape, and would affirm the denial of defendant's motion for new trial.

[15] The trial court first considered, then rejected, the use of probation in lieu of imprisonment. The court then proceeded to impose a sentence that was justified by the seriousness of defendant's criminal act, considering the need for public protection and defendant's own need for rehabilitation. This is in complete conformity with the standards set forth in *McCleary v. State* (1971), 49 Wis. 2d 263, 188 N. W. 2d 512.

[16] Defendant's motion entitled "Motion for Order Dismissing the Information or for a New Trial" states: "The basis for the

I am authorized to state that Mr. Justice ROLAND B. DAY joins in this dissent.

above motion is that the evidence in this case is not sufficient to prove beyond a reasonable doubt that the defendant was guilty of attempted rape under Wisconsin Statutes, Sec. 944.01 (1) and 939.32 (1).

"Defendant further submits that said basis was and is prejudicial to defendant's case [and] denied him a fair trial and due process of law."