**Robert B. UPSHAW, Petitioner,**

v.

**James POWELL, Director, Central State Hospital, Waupun, Wisconsin, and Bronson C. La Follette, Attorney General of the State of Wisconsin, Respondents.**

**Civ. A. No. 79–C–219.**

United States District Court,
E. D. Wisconsin.

Nov. 15, 1979.

Richard M. Sals, Asst. State Public Defender, Madison, Wis., for petitioner.

Bronson C. La Follette, Atty. Gen. by Kirbie Knutson, Asst. Atty. Gen., Madison, Wis., for respondents.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

The petitioner Robert B. Upshaw, who is presently an inmate of the Central State Hospital in Waupun, Wisconsin, has filed an application challenging his conviction on June 30, 1977, in the county court for Rock County, Wisconsin, of one count of attempted first degree sexual assault in violation of §§ 939.32(1) and 940.225(1)(b), Wis.Stats., one count of attempted burglary while armed in violation of § 943.10(2)(b), Wis.Stats., and one count of concealing identity while committing a crime in violation of § 946.62, Wis.Stats. On August 17, 1977, the petitioner was committed to the Central State Hospital pursuant to § 975.06(2), Wis.Stats., for specialized treatment based on the attempted sexual assault conviction. On Au-

gust 19, 1977, he was sentenced to five years on each of the other two charges, the sentences to run concurrent with each other and concurrent with the commitment.

The petitioner challenges his conviction on the ground that there was insufficient evidence to support a conviction for attempted first degree sexual assault. The State concedes that his conviction for attempted burglary while armed is dependent on the sexual assault conviction, and therefore if the evidence was insufficient to support the latter conviction, then the former also must fall. Having reviewed the state trial record, the Court is satisfied that the evidence was sufficient to sustain both convictions. Therefore, the petitioner's application will be denied.

In *Jackson v. Virginia,* —— U.S. ——, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the Court considered the standard to be applied under the Fourteenth Amendment to the United States Constitution by a federal district court in reviewing a habeas corpus petition challenging the sufficiency of evidence to support a criminal conviction. The Court concluded that:

> "After [*In re*] *Winship,* [397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)] the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.' *Woodby v. INS,* 385 U.S. 276, 282, 87 S.Ct. 483, 17 L.Ed.2d 362. Instead the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Johnson v. Louisiana,* 406 U.S. 356, 362, 92 S.Ct. 1620, 32 L.Ed.2d 152. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution. The criterion thus impinges upon 'jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law." (At —— – ——, 99 S.Ct. at 2789–90)

First degree sexual assault is defined in Wisconsin in § 940.225 (1975):

> "(1) First degree sexual assault. Whoever does any of the following is guilty of a Class B felony:
>
> " *   *   *
>
> "(b) Has sexual contact or sexual intercourse with another person without consent of that person by use or threat of use of a dangerous weapon or any article used or fashioned in a manner to lead the victim reasonably to believe it to be a dangerous weapon."

An attempted crime is defined in § 939.-32(2):

> "(2) An attempt to commit a crime requires that the actor have an intent to perform acts and attain a result which, if accomplished, would constitute such crime and that he does acts toward the commission of the crime which demonstrate unequivocally, under all the circumstances, that he formed that intent and would commit the crime except for the intervention of another person or some other extraneous factor."

Section 943.10, Wis.Stats., provides in part:

> "(1) Whoever intentionally enters any of the following places without the consent of the person in lawful possession and with intent to  *   *   *  commit a felony therein may be imprisoned not more than 10 years:
>
> "(a) Any building or dwelling; or
>
> " *   *   *

"(2) Whoever violates sub. (1) under any of the following circumstances may be imprisoned not more than 20 years:

" * * *

"(b) While unarmed, but arms himself with a dangerous weapon while still in the burglarized enclosure; * * * "

There is no Wisconsin case law describing the type of conduct required to demonstrate attempted first degree sexual assault under §§ 940.225 and 939.32(2), Wis.Stats. Under the predecessor rape statute, § 944.01 (1973), in conjunction with § 939.32(2), Wis. Stats.:

" * * * (2) the male must act toward the commission of the rape by overt acts which demonstrate unequivocally, under all the circumstances, that he formed the intent to rape and would have committed the rape except for the intervention of another person or some other extraneous factor." *Oakley v. State*, 22 Wis.2d 298, 306, 125 N.W.2d 657, 661 (1964).

Section 944.01 proscribed "sexual *intercourse* with a female * * * by force and against her will * * *." (Emphasis added.) Thus the case law required that the State demonstrate that the defendant "had done acts toward the commission of the crime of rape which demonstrated unequivocally under all the circumstances, that he intended to perform the acts, constituting the crime * * *," and not merely to perform some other sexual perversion or a lesser act of battery. *Jaworski v. State*, 74 Wis.2d 134, 137, 246 N.W.2d 137, 138 (1976). See also *Le Barron v. State*, 32 Wis.2d 294, 299, 145 N.W.2d 79 (1966); *Adams v. State*, 57 Wis.2d 515, 520, 204 N.W.2d 657 (1973); *Leach v. State*, 83 Wis.2d 199, 216, 265 N.W.2d 495 (1978); *Lhost v. State*, 85 Wis.2d 620, 628, 271 N.W.2d 121 (1978). Section 940.225(1)(b), Wis.Stats. (1975), however, proscribes "sexual *contact* or sexual intercourse." (Emphasis added.) Sexual contact is defined in § 940.225(5)(b) and includes "any intentional touching of the intimate parts, clothed or unclothed, of a person to the intimate parts, clothed or unclothed, of another, * * * for the purpose of sexual arousal * * *." Thus § 940.225 proscribes a far greater range of activity than did § 944.01, and the cases interpreting the earlier statute are not illuminative of the acts required to commit an attempted first degree sexual assault under § 940.225(1)(b). Those cases do state, however, that sexual intercourse need not be accomplished in order to sustain a conviction under §§ 944.01 and 939.32(2), Wis.Stats., so long as the defendant's acts indicate unequivocally what his intention was. Similarly, it would seem that sexual contact as defined in § 940.225(5)(b) need not be accomplished in order to sustain a conviction under §§ 940.225(1)(b) and 939.-32(2), so long as the defendant's acts indicate unequivocally that he intended to have sexual contact with the victim.

The evidence introduced at the trial of this action showed that petitioner entered the house of one Deborah Johnson on the evening of December 6, 1976, by breaking a window (R. 160–161, 177–178, 237–239, 244),* and that while he was inside the house the broken glass was hidden under a couch and piano (R. 162), the overhead light bulb in the bedroom was loosened in its socket (R. 166–167), a pillow case was removed from the bed and cut into strips (R. 170) which were tied to the four bed legs (R. 168–169, 170, 239–240), the bed was remade (R. 239), and a rock was placed at the head of the bed (R. 170, 174, 240–241). The evidence further showed that Ms. Johnson arrived home at approximately 10:15 P.M. (R. 154), was preceded into the house by one of two large dogs (R. 155) which she had kept in a pen behind the garage and had just released (R. 155), that Ms. Johnson saw petitioner wearing a green parka with the hood pulled up and red material over his face (R. 156, 172–173, 191, 229) and with a ten inch knife in his hand (R. 156–158, 174), that petitioner ran past Ms. Johnson out of the house (R. 159, 160), waving the knife at

---

* The state court record is numbered by page commencing with the complaint. The page numbers to which the court refers are the handwritten record page numbers, and not the typewritten page numbers of the trial transcript.

the dogs (R. 157, 159), that Ms. Johnson immediately called the police (R. 160), and that petitioner was apprehended in the neighborhood while running (R. 200, 202–204, 219, 221, 234) shortly afterward (R. 250–251). At the time of his apprehension petitioner did not have a knife (R. 206, 226), he did have on a green parka, and a maroon cap and a washcloth taken from Ms. Johnson's house were found near him (R. 222–223), and he had on two pairs of trousers which were unzipped, exposing his penis (R. 224, 252–253). Ms. Johnson testified that the knife which she had seen petitioner holding resembled one missing from her kitchen (R. 175, 192–193), that the rock was similar to rocks in a path leading to her dog pen (R. 174), that she had not consented to petitioner's entry into her house (R. 176), and that she would not have consented to sexual intercourse or contact with petitioner (R. 176).

Viewing that evidence in the light most favorable to the prosecution, the Court is persuaded that a rational trier of fact, by drawing reasonable inferences from the evidence presented, could have found the essential elements of the crime charged beyond a reasonable doubt. Thus the trier of fact could have inferred (1) that petitioner entered Ms. Johnson's house without her consent, § 943.10(1)(a), Wis.Stats.; (2) that he then made preparations in her bedroom, unzipped his trousers, and hid the evidence of his entry for the purpose of surprising her and having sexual contact with her without her consent, § 940.225(1)(b), Wis. Stats.; (3) that he acquired the knife and the rock from her house and yard and put the rock under the bed for the purpose of threatening her and to force her to have sexual contact, §§ 940.225(1)(b) and 943.-10(2)(b), Wis.Stats.; and (4) that he was prevented from attaining the result which he intended only because of her entry into the house with two large dogs, § 939.32(2), Wis.Stats.

Petitioner has advanced some alternate theories for his conduct, for instance, that he prepared Ms. Johnson's bedroom as he did in order to act out a sexual fantasy and then intended to leave the house before anyone returned. In view of the loosened light bulb, the hidden broken glass, and the remade bed, that explanation is highly implausible. The inferences drawn by the trier of fact from the evidence must be reasonable, *United States v. Puntillo*, 440 F.2d 540, 542 (7th Cir. 1971), but they need not be the only possible explanations which can be imagined. The fact that petitioner was prevented from completing the act which his conduct indicates he intended by Ms. Johnson's arrival with the dogs, and consequently that he did not make any direct attempt to touch her, is not sufficient to defeat the inferences reasonably drawn from his prior actions as to what he did in fact intend. A conviction based on circumstantial evidence alone is permissible, *Rudolph v. State*, 78 Wis.2d 435, 444, 254 N.W.2d 471 (1977), and as stated above this Court does not believe that the Wisconsin Supreme Court will require that any contact with the victim be accomplished in order to demonstrate the defendant's intention under §§ 940.225(1)(b) and 939.32(2), Wis.Stats.

The Court is satisfied that the inferences which the jury must have drawn in order to reach the verdict that it did were reasonable, that the evidence was sufficient to support the convictions, and that the convictions did not result in a denial of due process to the petitioner.

IT IS THEREFORE ORDERED that the application of the petitioner Robert B. Upshaw for a writ of habeas corpus is denied.