Hillsborough
No. 89-165

THE STATE OF NEW HAMPSHIRE

v.

PARRISH JERNIGAN

July 18, 1990

*John P. Arnold*, attorney general (*Tina Schneider*, assistant attorney general, on the brief and orally), for the State.

*James E. Duggan*, chief appellate defender, of Concord, by brief and orally, for the defendant.

PER CURIAM. The Superior Court (*Dalianis*, J.) convicted the defendant, Parrish Jernigan, of burglary, RSA 635:1, and attempted aggravated felonious sexual assault, RSA 632-A:2; RSA 629:1. The defendant appeals only the latter conviction, assigning error to the superior court's refusal to find that he had proven as a matter of law the affirmative defense of voluntary renunciation, RSA 629:1, III. We affirm.

In August 1987, the victim and her husband hired Willard's Kitchens of Hooksett to remodel their kitchen, and the defendant was one of the Willard's employees who worked on this project. On August 27, the victim remained at home alone when her husband took two of their children on a weekend trip to Maine. Sometime after 2:00 a.m. the following morning, the defendant illegally entered the victim's house, apparently using a key that the victim had left outside for the Willard's employees to enable them to get an early start the following morning. The victim was awakened in her second-floor bedroom by the sound of creaking floors, but, hoping that she was not in danger, remained in her bed. She soon became aware that the defendant was in her bedroom, but could not ascertain his identity. Fearing for her life, the victim remained motionless and silent on her back until the defendant, naked, lifted the bed comforter and lay down upon her.

The victim was the sole witness to describe the assault at trial. As she described the events, the defendant first attempted to push her arms back and to remove her nightshirt, but she resisted, and, consequently, the defendant was unable to remove her nightshirt completely. At this point, the defendant said, "You are not going to believe who this is," but the victim was still unable to identify him. The victim then spoke to her attacker for the first time: "No, no, no, oh God, don't do this to me. Dear Lord, please stop." Despite her repeated invocations to God, however, the defendant did not desist.

The victim tried to defend herself by holding her knees together and by pushing the defendant away, but the defendant managed to remove her underwear and to push his erect penis, which he held in his fist, between her thighs. The victim struggled on for approximately two minutes, as the defendant continued to talk and drop hints about his identity. The victim testified that she was unable to push the defendant away, apparently because he was considerably stronger than she, and although the defendant did not strike her, she did sustain bruises on her inner thighs and arms as a result of the attack.

At some point, the defendant held his penis against the victim's vagina, without penetrating, for at least thirty seconds. The victim tried, without success, to convince the defendant to desist by telling him that she was menstruating, but when she repeated her earlier plea, "Dear Lord, please stop," the defendant did stop and said, "I know the Lord, too. He sent me here." Having said this, the defendant stood, dressed, and told the victim that God had sent him to inquire into her relationship with her husband, that he did not wish to hurt her, and that she could telephone her husband once he had left.

By this time, the victim, although still unable to see the defendant, was able to identify him as one of the Willard's employees. The defendant asked her to turn on a light so that she could see him, but she refused. He eventually left the victim's bedroom, affording her the opportunity to telephone the police, but she discovered that her bedroom telephone was out of order. As she started down the stairs to try another telephone, the defendant confronted her on the staircase, told her his name, and attempted unsuccessfully to calm her by holding her. The defendant finally left the house, and the victim immediately telephoned the police, who apprehended the defendant soon afterward.

According to the testimony of arresting Officer Glenn Leidemer, the defendant, while in custody, apologized for the assault and said that "the Lord had forced him to do it," that "the Lord had told him to test [the victim's] faithfulness to her husband," that he had not used any force on the victim and that he had stopped his sexual advances once the victim had told him that she did not wish to have sex with him.

At trial, at the close of the State's case, the defense moved to dismiss the attempted aggravated felonious sexual assault charge on the ground that, viewing the evidence in the light most favorable to the State, a reasonable trier of fact would be compelled to find that the defendant had proven by a preponderance of the evidence the affirmative defense that he had voluntarily renounced his criminal purpose, RSA 629:1, III; see RSA 626:7, I(b) (defendant has burden of establishing affirmative defense by preponderance of evidence). The court denied the defendant's motion, and instructed the jury on voluntary renunciation as an affirmative defense to the crime of attempt, RSA 629:1, III. Even though the trial court incorrectly placed the burden on the State to negate the defense beyond a reasonable doubt, the jury found the defendant guilty of burglary and attempted aggravated felonious sexual assault, and the defendant appealed the

latter conviction on the ground that the trial court erred in denying his motion to dismiss. Upon examination of the record, we conclude that a jury faced with the evidence proffered by the State in this case could reasonably have concluded that the defendant did not prove voluntary renunciation by a preponderance of the evidence, and we therefore hold that the superior court was not compelled to find voluntary renunciation as a matter of law.

RSA 629:1, III provides that:

> "(a) It is an affirmative defense to [attempt] that the actor voluntarily renounces his criminal purpose by abandoning his effort to commit the crime or otherwise preventing its commission under circumstances manifesting a complete withdrawal of his criminal purpose.

> (b) A renunciation is not 'voluntary' if it is substantially motivated by circumstances the defendant was not aware of at the inception of his conduct which increase the probability of his detection or which make more difficult the commission of the crime. Renunciation is not complete if the purpose is to postpone the criminal conduct until a more advantageous time or to transfer the criminal effort to another but similar objective or victim."

■ ■ A defendant who raises RSA 629:1, III as an affirmative defense bears the burden of showing by a preponderance of the evidence both that he completely abandoned his criminal purpose and that the abandonment was voluntary. *See* RSA 629:1, III, 626:7, 1(b). Trial courts cannot readily find voluntary renunciation as a matter of law, as they are precluded from doing so unless "the undisputed testimony and required inferences compel a finding that the defendant renounced his criminal purpose." *State v. Patten*, 126 N.H. 227, 227, 489 A.2d 657, 658 (1985).

■ There was little question at trial that the defendant completely abandoned his criminal purpose; he apparently did not resume his criminal effort once he had ceased his attack in the victim's bedroom. The State now contends, to the contrary, that, rather than abandoning his criminal purpose completely, the defendant merely transferred it at some point during the assault from aggravated felonious sexual assault to a simple sexual assault. The State, however, misconstrues the "transferred effort" exception of RSA 629:1, III(b), which applies only when the defendant continues to engage in a similar course of criminal conduct *after* the purported renuncia-

tion. The defendant did not resume any criminal conduct after his renunciation, and thus the State's argument is without merit.

■ With respect to the second requirement of RSA 629:1, III, however, the evidence fell short of compelling a finding that the defendant's abandonment was voluntary, and thus precluded the trial court from finding voluntary renunciation as a matter of law. RSA 629:1, III does not define the term "voluntary." It does, however, provide that "a renunciation is not 'voluntary' if it is substantially motivated by circumstances the defendant was not aware of at the inception of his conduct which . . . make more difficult the commission of his crime." RSA 629:1, III(b). As the following evidentiary analysis shows, contrary to the defendant's contention, there was sufficient evidence in the record for the jury to conclude that the defendant did not cease his attack voluntarily, but did so in response to the victim's physical resistance and other physical circumstances which made more difficult the commission of his crime and which, consequently, rendered his abandonment involuntary. It is also noteworthy that the record fails to indicate that the defendant's physical capacity to complete the offense was maintained up to and beyond the point at which he desisted from the assault.

First, the victim testified unequivocally that she and the defendant engaged in a struggle, the magnitude of which was evidenced by testimony as to the bruises left on her thighs and arms. The jury could reasonably have inferred from this evidence that the defendant had a difficult time subduing the victim, and although the degree of the difficulty may be difficult to measure, it was the defendant's burden to establish that it was not the cause of his abandonment of his criminal purpose. *See Adams v. State*, 57 Wis. 2d 515, 522–23, 204 N.W.2d 657, 662 (1973).

Second, in the hope of dissuading the defendant from completing his assault, the victim told him, presumably insincerely, that she was menstruating. This statement occurred sufficiently close to the defendant's abandonment that the jury could reasonably have inferred that the statement described a physical circumstance that substantially motivated the defendant to desist. *See Le Barron v. State*, 32 Wis. 2d 294, 300–01, 145 N.W.2d 79, 81–82 (1966) (conviction for attempted rape upheld notwithstanding fact that defendant abandoned criminal effort after victim told him that she was pregnant). In any case, it was the defendant's burden to persuade the jury that this was not the reason, and the state of the evidence compelled no finding in his favor.

Third, the jury may also have based its determination, at least in part, on the demeanor of the trial witnesses, the importance of which this court cannot fully ascertain by examining the record but which may justifiably have influenced the jury's determination. The victim's demeanor, for instance, may have influenced the jury's impression of the magnitude of the victim's struggle, or of the extent to which the victim's pleas did or did not contribute to the defendant's cessation of his assault.

While it is true that the evidence described above does not show conclusively that the defendant's renunciation was involuntary, it must be emphasized that the burden of proof with respect to this issue lies with the defendant, whose proffered evidence in support of his affirmative defense is no more conclusive. The defendant claims, for example, that he experienced a change of heart and abandoned his effort voluntarily when the victim invoked God. Even if we assume, *arguendo*, that such an abandonment may be characterized as voluntary under RSA 629:1, III, we find, in any event, that the testimony of the victim raises significant doubt as to whether her invocation of God was in fact the primary cause of the defendant's abandonment. According to the victim, the defendant did, in fact, stop his assault when the victim invoked God. This was not, however, the first time during the assault that the victim had done so. She apparently invoked God several times at the beginning of the assault as well, without deterring the defendant, or provoking from him any response. Contrary to the defendant's contention, therefore, the victim's testimony suggests that it was not her appeal to the defendant's conscience, but rather, some extraneous physical cause, perhaps the victim's struggling, that ultimately stopped the defendant.

The remaining evidence in support of the defendant's affirmative defense is similarly inconclusive. The victim stated that the defendant held his penis against her vagina for at least thirty seconds without penetrating her, and that he abandoned his effort at some point after this thirty-second period. If the victim did not resist the defendant during this period, it stands to reason that he abandoned his assault voluntarily. The victim, however, did not state conclusively either that this thirty-second period was concurrent with, or that it followed, the two-minute struggle, or, for that matter, that the defendant maintained his erection throughout the thirty seconds. The

victim testified, in fact, that "[t]he length of my struggle may have been long enough for him to lose an erection and be unable to complete the act, I can't say." Given this ambiguity, it is just as possible that the defendant abandoned his criminal activity because the victim's resistance continued up to the time of the abandonment, or, if it ended earlier, that the struggle (or the invocation of God) caused the defendant to lose his erection prior to penetration. Given either possibility, there was no compulsion to find that the defendant had carried his burden under RSA 629:1, III to prove that he desisted voluntarily, not in reaction to an extraneous physical circumstance that rendered more difficult the commission of the crime.

Given the ambiguity of the record with respect to key elements of the struggle between the defendant and the victim, the jury could reasonably find that the defendant failed to prove by a preponderance of the evidence that he voluntarily renounced his attempted aggravated felonious sexual assault. We hold, therefore, that the trial court was not compelled to find, and did not err in refusing to find, that the defendant proved voluntary renunciation as a matter of law.

*Affirmed.*

HORTON, J., did not sit.