BALDWIN, Plaintiff in error, v. STATE, Defendant in error.

*No. State 147. Submitted under sec. (Rule) 251.54 January 4, 1974.—Decided February 25, 1974.*
(Also reported in 215 N. W. 2d 541.)

522

The cause was submitted for the plaintiff in error on the brief of *Robert G. Felker* of Brookfield, and for the defendant in error on the brief of *Robert W. Warren,* attorney general, and *Robert D. Martinson,* assistant attorney general.

HALLOWS, C. J. Prior to the conviction in this case, Baldwin was tried for and convicted in Waukesha county of rape and false imprisonment, crimes which arose out of some of the same facts on which the convictions in this case are founded. His convictions in Waukesha county were affirmed in *Baldwin v. State* (1973), 59 Wis. 2d 116, 207 N. W. 2d 630, wherein the facts are set forth in detail. On this appeal, Baldwin argues, among other things, that he cannot be convicted again for false imprisonment in Milwaukee county. He also claims he was wrongfully denied a substitution of judge under sec. 971.20, Stats., when the trial judge assigned to hear the case denied his request for an assignment of judge because the request was untimely.

In respect to the false imprisonment claim, the issue is whether there is one continuous imprisonment or two imprisonments, one occurring in Milwaukee county and the other in Waukesha county. Preliminarily, we must acknowledge that crimes are offenses against the state, not against counties, and the place where the crime is committed determines the place of trial. The facts giving rise to the false-imprisonment issue are not in dispute.

On the evening of July 31, 1971, the victim was driving her boyfriend's car alone on Wisconsin Avenue in the city of Milwaukee. Baldwin and his companion were also cruising Wisconsin Avenue and drove alongside her car and attempted to engage her in a conversation. The two cars proceeded west on Wisconsin Avenue. About 61st and Bluemound Road, Baldwin swerved his car toward her car and forced her to stop. She declined an offer to go with Baldwin and his companion for drinks and drove off west on Bluemound Road, followed by Baldwin and his companion. At Honey Creek Parkway, she left Bluemound Road. Baldwin, who was following her, drove alongside her car on Honey Creek Parkway and forced her to stop. By threats he forced her to roll down the window and when she did so, he grabbed her by the throat. His companion then put a switchblade knife to her throat, forced his way into her car, and took over the driving of her car. Baldwin proceeded in his own car to I–94 and then toward Waukesha on the highway. He was followed by his companion driving the victim's boyfriend's car with her in it. While driving along I–94, Baldwin's companion made indecent advances to the victim. These are the facts relating to what happened before the cars crossed the county line into Waukesha county. In Waukesha county, the cars turned off of I–94 onto Highway 18 and, while Baldwin's companion was making a turn near the state patrol headquarters, the victim jumped out of the car and attempted to reach the safety of the highway patrol station by running across the field. Baldwin drove his car into the parking lot of the state patrol station, got out, intercepted the victim in the field and then forced her into his car. He then drove off and later raped her.

Baldwin argues there was but one single course of action involving the victim and it was not broken by her attempted escape from her boyfriend's car driven by Baldwin's companion, and her being caught by Baldwin

and being transferred to his car. Under Baldwin's theory, the false imprisonment continued from Milwaukee county until the time of the rape in Waukesha county.

The state maintains the false imprisonment commenced when Baldwin's companion took over the driving of the victim's boyfriend's car and forced her to remain in it against her will, to which crime Baldwin was a party, and was broken by the alleged escape in Waukesha county. A new crime of false imprisonment was committed by Baldwin as a principal when he captured the victim and confined her to his car in Waukesha county. On this theory, Baldwin was convicted in Waukesha county as a principal to false imprisonment and in Milwaukee county as a party to false imprisonment.

The crime of false imprisonment is committed by "whoever intentionally confines or restrains another without his consent with knowledge that he has no lawful authority to do so." Sec. 940.30, Stats. We think the facts of this case support two separate imprisonments of the victim by Baldwin, who acted first as a party and then as a principal to attain his purpose. Although the penalty for conviction as a party to a crime may be the same as that of a principal, that fact does not change the essential nature of the facts or make two crimes one. Nor do we hold that a continuous imprisonment in an automobile by the same actor constitutes a separate crime in each county through which the auto passes. Here, the actor's participation changed, the cars changed, and the restraint changed.

By analogy, *In re Snow* (1887), 120 U. S. 274, 7 Sup. Ct. 556, 30 L. Ed. 658, held the offense of cohabitation was a continuous offense having duration and not consisting of an isolated act. Thus the defendant could not be convicted on three separate indictments for illegally cohabiting with the same woman, each indictment charging cohabitation for one year. In *Blockburger v. United States* (1932), 284 U. S. 299, 52 Sup. Ct. 180, 76 L. Ed.

306, in distinguishing *Snow,* the court explained that in a case of successive sales of narcotics, the crime was the act of making a sale, not a course of conduct, and an individual could be convicted for each sale. The court relied on Wharton's, *Criminal Law* (11th ed.), sec. 34, "The test is whether the individual acts are prohibited, or the course of action which they constitute. If the former, then each act is punishable separately. . . . If the latter, there can be but one penalty." *See also: State v. Boucher* (1970), 286 Minn. 475, 176 N. W. 2d 624; *State v. Will-hite* (1956), 40 N. J. Super. 405, 123 Atl. 2d 237, where this rationale was applied to void successive reckless driving convictions proceeding from a single course of driving through several counties. However, in false imprisonment, it is not each act of control which constitutes the crime but the effect of many acts which confines or restrains a person against his will.

We hold that false imprisonment is a crime of a continuous nature and exists so long as the confinement of the person without his consent continues uninterrupted. Consequently, Baldwin's conviction in Milwaukee county as a party to the crime of false imprisonment after he was convicted for false imprisonment in Waukesha county did not place him in double jeopardy or violate his constitutional rights.

In his second argument, Baldwin claims he was wrongfully denied the right to a substitution of a trial judge. In Milwaukee county,[1] Baldwin, for his initial appear-

---

[1] The procedure in this case is somewhat different than the present procedure now in effect in Milwaukee county. We are informed the present procedure is as follows: When a complaint in a felony case is filed with the felony clerk in the clerk's office, the case is assigned by lot by the clerk to one of the judges doing criminal work, whether he is elected or an active judge assigned on a general-assignment basis. At the present time there are six judges hearing criminal cases in Milwaukee county—the three elected to criminal branches, two reserve judges and one judge elected to a civil branch who is assigned generally to the criminal

ance, was brought before Circuit Judge JOHN L. COFFEY, who was then acting as an in-take judge for the criminal division. Bail was set and a preliminary hearing had. After the bindover Baldwin again appeared before Judge COFFEY and stated he would plead not guilty to both counts as charged in the information, but he wished the case to be held until the charges against him in Waukesha county were disposed of and then he would probably plead guilty. After the Waukesha matters were disposed of, the case was called before Judge COFFEY as the in-take judge and Baldwin changed his plea from not guilty to guilty. At a hearing to determine whether the plea should

branches. Prior to this time an information is also prepared and kept by the district attorney for use if the defendant wishes to plead guilty at his initial appearance. The case is taken to the in-take judge who is one of the three elected judges to the criminal branch who, besides trying cases, spend sixty days in rotation as an in-take judge hearing initial appearances. At the initial appearance, bail is set, an attorney appointed if needed, and a preliminary hearing set or waived. If a preliminary hearing is not waived, the case is sent to the county court for the hearing. If the county court finds probable cause, the case is then transferred to the criminal judge to whom it was assigned by the clerk. If the accused waives the preliminary hearing before the in-take judge, he is then bound over and the case transferred to the criminal judge to whom it was originally assigned by the clerk.

In either case the accused, after the bindover, knows which of the elected or assigned judges is going to try the case and is arraigned before him. If an affidavit is then filed for a substituted judge, the case is then sent back to the clerk who by lot reassigns the case to one of the elected criminal judges as a substituted judge. However, when a trial judge voluntarily disqualifies himself and there is an urgency for the trial, the disqualifying judge determines what other criminal judge, whether elected, assigned or reserve, can hear the case immediately; and if he can find one, the case is assigned to him. For this purpose, the reserve judges assigned to the criminal branch are used. If there is no criminal judge who can hear the case within a reasonable time, the case is called to the attention of the chief judge, who then attempts to find a judge in another branch of the circuit court who is not busy and assigns the case to him for trial.

be accepted, Baldwin denied he directed his companion to get into the victim's car and to follow him into Waukesha county. Without the admission of this fact, Baldwin could not be held to be a party to the false imprisonment of the victim; consequently, Judge COFFEY refused the plea and set the trial for June 5, 1972, before him as the trial judge. This case had been originally assigned by the clerk under sec. 270.12, Stats., to Judge COFFEY as the trial judge. On June 5th a negotiated plea was offered in which Baldwin was to plead guilty to the charge of being a party to false imprisonment and the charge of driving a car without the owner's consent would be dismissed. Judge COFFEY, after hearing the details, refused to accept the plea and voluntarily disqualified himself from trying the case and assigned it to Circuit Judge CHRIST T. SERAPHIM for trial.

On July 10, 1972, at a hearing before Judge SERAPHIM to set the trial date, the plea of not guilty, which had been made before Judge COFFEY and which he either reinstated or refused to allow the defendant to withdraw, was affirmed. Baldwin requested a jury trial and July 25th was set by the court as a trial date. On the day of trial, Baldwin's counsel informed Judge SERAPHIM that Baldwin wanted a substitution of judge. Counsel knew of Baldwin's desire prior to the trial date although sometime after the trial date had been set but delayed filing the request until the day of trial. The request was denied as coming too late under sec. 971.20, Stats.[2] This section requires the request for a substitution of a judge to be made before any motions are made or an arraignment is had.

---

[2] "971.20 **Substitution of judge.** (1) The defendant may file with the clerk a written request for a substitution of a new judge for the judge assigned to the trial of that case. Such request shall be signed by the defendant personally and shall be made before making any motion or before arraignment."

The state argues sec. 971.20, Stats., is clear on its face and precludes a defendant, no matter how extenuating the circumstances, from claiming the statutory right to a substitution of judge in the request for such substitution if not timely under sec. 971.20. Baldwin argues that where, as here, the trial judge originally assigned to the case voluntarily disqualifies himself after arraignment of the defendant, sec. 971.20 should be construed to permit the defendant the opportunity to file a request for a substitution of a new judge for the judge to whom the case has been reassigned.

Unless sec. 971.20, Stats., is construed to give all defendants an equal opportunity to obtain a substituted judge who is to try his case, it falls short of fulfilling the constitutional requirement of a fair trial. The state of Wisconsin in its recognition that every accused is entitled to a fair trial provides an impartial judge at the request of the defendant without any showing of any prejudice in fact. However, sec. 971.20 requires that such request be made prior to arraignment. This section works well in the majority of cases because the trial judge before whom the defendant is arraigned normally hears the case and sets the case for trial. In those cases, the defendant knows at the time he enters his plea what judge is going to try the case, barring accident or illness, and the trial date is then set. But in courts where a calendaring judge is used and the arraignment sets out the guilty pleas and disposes of them at that time and the cases in which nonguilty pleas are entered are assigned for trial to other judges, the defendant does not then know what judge will be assigned to try his case until after he has entered his not-guilty plea. Such is the system in Milwaukee county. Since the calendaring judge is not permanently assigned that duty in Milwaukee county, he must also assign to himself some cases to try when he is not calendaring, so he, too, has a trial calendar; con-

sequently, in those cases in which he has heard part of the evidence and rejected a plea, he may quite properly disqualify himself after arraignment.

A strict construction of sec. 971.20, Stats., would deny in many cases the constitutional right to a fair trial because a defendant is unable at the time of the arraignment to know what judge is to try his case. For the purpose of this section, we therefore recognize that in a calendaring procedure, such as is used in Milwaukee county, the arraignment is only initiated at the calendaring of the case and the plea of not guilty entered then is for the purpose of obtaining a judge who will actually hear the case. The arraignment is completed upon the confirmation of the plea of not guilty before the judge to whom the case is assigned for trial when he sets the date for trial. This is the latest time the defendant can exercise his right to a substituted judge under sec. 971.20. This construction of arraignment for the purpose of this statute places the defendant, who finds himself in a multi-judge, criminal court with a master calendaring system, in the same position under this statute as a defendant whose case is processed and calendared before a single, criminal judge. This interpretation witnesses and gives effect to a predominant intention of the legislature expressed in the section to "afford a substitution of a new judge assigned to the trial of that case." The strict construction makes it impossible to obtain the objective of this section and would frustrate the objective of this statute.

This interpretation finds support in the history of the section. In the judicial committee's comment to sec. 971.20, Stats., reference is made to the Illinois and Montana substitution statutes.[3] Both the Illinois and Montana statutes impose a time limitation within which the sub-

---

[3] "38. Section 114-5. **Substitution of judge.** (a) Within 10 days after a cause involving only one defendant has been placed on the trial call of a judge the defendant may move the court in writing

stitution request must be made but neither statute phrases the limitation in terms of the arraignment. Both are keyed to the trial date. In Illinois the time limitation is cast in terms of days after the case is assigned for trial and the date is set. Montana reaches the same result by designating a time prior to the trial of the case. In both cases, the defendant knows the identity of the judge who is trying the case and can exercise his right intelligently.

for a substitution of judge or any 2 judges on the ground that such judge or judges are so prejudiced against him that he cannot receive a fair trial. Upon the filing of such a motion the court shall proceed no further in the cause but shall transfer it to another court or judge not named in the motion.

"(b) Within 24 hours after a motion is made for substitution of judge in a cause with multiple defendants each defendant shall have the right to move in accordance with subsection (a) of this Section for a substitution of one judge. The total number of judges named as prejudiced by all defendants shall not exceed the total number of defendants. The first motion for substitution of judges in a cause with multiple defendants shall be made within 10 days after the cause has been placed on the trial call of a judge."

"95–1709. Substitution of judge. (a) The defendant or the prosecution may move the court in writing for a substitution of judge on the ground that he cannot have a fair and impartial hearing or trial before said judge. The motion shall be made at least fifteen (15) days prior to the trial of the case, or any retrial thereof after appeal, except for good cause shown. Upon the filing of such a motion the judge against whom the motion is filed shall be without authority to act further in the criminal action, motion or proceeding but the provisions of this section do not apply to the arrangement of the calendar, the regulation of the order of business, the power of transferring the criminal action or proceeding to some other court, nor to the power of calling in another judge to sit and act in such criminal action or proceeding, providing that no judge shall so arrange the calendar as to defeat the purposes of this section. Not more than one (1) judge can be disqualified in the criminal action or proceeding, at the instance of the prosecution and not more than one (1) judge at the instance of the defendant or defendants."

In *Meverden v. State* (1951), 258 Wis. 628, 634, 46 N. W. 2d 836, the court construed sec. 356.03 (1), Stats. 1947, predecessor of sec. 956.03, Stats. 1967, which itself formed the basis of sec. 971.20 as being an expression of the "legislative intent . . . [that] a person's right to a fair trial shall be preserved." The language of sec. 971.20 must apply as reasonably as possible to all cases to attain its object. The right to the substitution of a judge must have a reasonable time limit for its exercise. No objection has been raised that the arraignment as the cut-off date is unreasonable. Even in a multi-branch court, the assignment is made some weeks before an arraignment can be scheduled and so the accused has ample time to decide if he desires a substitution of a judge. One thing which should not be allowed is the disruption of the orderly calendaring and trial of a case by a request on the day of trial or at a time which upsets a trial date.

This court has denied a request for a substitution of a judge because of the untimeliness of the request. In *State v. Beaty* (1973), 57 Wis. 2d 531, 205 N. W. 2d 11, and *State v. White* (1972), 53 Wis. 2d 549, 193 N. W. 2d 36, the court upheld the trial court's refusal to honor the request for a substitution as untimely. In both cases, the request was made sometime after the arraignment hearing. In these cases, the arraignment was held before the same judge who was to try the case and this was known to the defendant upon arraignment. Nothing prevented the defendant from making the request prior to his plea. Consequently, the issue was not the denial of the right to a fair trial but the failure of the defendant to comply with the time limitation of sec. 971.20, Stats., when compliance could have been achieved. The same issue is involved in *State v. Bell*, post, p. 534, 215 N. W. 2d 535, and on this appeal. Baldwin waited until the day of trial—too long even under our enlarged definition of "arraignment." He should have requested a substitution

of judge when he appeared before Judge SERAPHIM to set a date for trial and affirmed his plea and asked for a jury trial.

Baldwin argues the imposition of maximum consecutive sentences was improperly based upon what the court believed was the inadequacy of the sentences imposed by the Waukesha court. The record does not support this contention. While the trial court did state Baldwin had been leniently treated in Waukesha, it does not follow nor did the trial court state its sentences were in any way an attempt to make up for what the trial judge considered an inadequate Waukesha sentence.

The trial judge considered several bases for the imposition of maximum consecutive sentences, any one of which would have been sufficient. These convictions were not based upon a joy ride of teenagers but were based upon a series of aggravated events in which a young woman was deliberately forced off the road, threatened with a knife and forced to remain in a car until she was raped. Besides, the court considered Baldwin had consistently and repeatedly lied to the court.

*McCleary v. State* (1971), 49 Wis. 2d 263, 182 N. W. 2d 512, does not require this court to set aside or modify these sentences.

*By the Court.*—Judgment and order affirmed.