CLARK, Plaintiff in error, v. STATE, Defendant in error.

Supreme Court

*No. 77–138–CR. Submitted on briefs October 10, 1979.—Decided December 4, 1979.*

(Also reported in 286 N.W.2d 344.)

618

For the plaintiff in error the cause was submitted on the briefs of *Howard B. Eisenberg,* state public defender, and *Jack E. Schairer,* assistant state public defender.

For the defendant in error the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Maryann S. Calef,* assistant attorney general.

SHIRLEY S. ABRAHAMSON, J. Robert Earl Clark, the defendant, was convicted of attempted kidnapping. He seeks reversal of his conviction and reversal of the order denying his motion for a new trial on three grounds: the circuit judge failed to honor Clark's request for substitution of judge; the evidence is insufficient to sustain the verdict; and the circuit court erred in the jury instructions. Clark also seeks reversal of the order denying him credit against his term for time spent at the Winnebago State Hospital pursuant to a court-ordered sex deviate examination. We affirm the judgment and the orders of the court.

I.

Clark asserts that his request for a substitution of judge was not honored and that the circuit court therefore had no authority to hear his case. The State counters by arguing that the request for substitution was not timely made.

Section 971.20, Stats. 1975, sets forth the procedure to follow when filing a request for a substitution for the judge assigned to the case. The defendant must personally sign a written request which he files with the clerk "before making any motion or before arraignment." ·

"971.20 **Substitution of judge.** (1) The defendant may file with the clerk a written request for a substitution of a new judge for the judge assigned to the trial of that case. Such request shall be signed by the defendant

personally and shall be made before making any motion or before arraignment, except that whenever a new judge is assigned to a case in place of the original judge, other than under this section, then a request for a substitution of judges may be made at any time before making any motion before such new judge or before commencement of any proceeding before such new judge.

"(2) Upon the filing of such request in proper form and within the proper time the judge named in the request shall be without authority to act further in the case except to set bail if requested by the defendant. Not more than one judge can be disqualified in any action."

The sequence of events in the case at bar was as follows: A criminal complaint was filed on June 21, 1976, charging Robert Earl Clark with attempted kidnapping in violation of secs. 940.31[1] and 939.32,[2] Stats. His in-

[1] Sec. 940.31, Stats., provides:

"940.31 Kidnapping. (1) Whoever does any of the following is guilty of a Class B felony:

"(a) By force or threat of imminent force carries another from one place to another without his consent and with intent to cause him to be secretly confined or imprisoned or to be carried out of this state or to be held to service against his will; or

"(b) By force or threat of imminent force seizes or confines another without his consent and with intent to cause him to be secretly confined or imprisoned or to be carried out of this state or to be held to service against his will; or

"(c) By deceit induces another to go from one place to another with intent to cause him to be secretly confined or imprisoned or to be carried out of this state or to be held to service against his will.

"(2) Whoever violates sub. (1) with intent to cause another to transfer property in order to obtain the release of the victim is guilty of a Class A felony; but if the victim is released without permanent physical injury prior to the time the first witness is sworn at the trial the defendant is guilty of a Class B felony."

[2] Sec. 939.32, Stats., provides:

"939.32 Attempt. (1) Whoever attempts to commit a felony . . . may be fined or imprisoned or both not to exceed one-half the maximum penalty for the completed crime . . . .

"(2) An attempt to commit a crime requires that the actor have an intent to perform acts and attain a result which, if accom-

itial appearance and the preliminary hearing were in county court of Kenosha county before Judge Burton A. Scott. Clark was bound over to circuit court for trial; no branch of circuit court was specified in the bindover order.

On August 6, 1976, an information alleging attempted kidnapping was filed in the circuit court for Kenosha county. On the same date, Clark filed a motion to quash the information; the caption of the motion does not specify the branch of the Kenosha county circuit court or the judge thereof.

On August 11, 1976, Clark filed a request for substitution of judges in the form prescribed by sec. 971.20 (5), Stats.:[3]

"Pursuant to the applicable section of the Wisconsin statutes, the defendant above named requests a substitution for the Honorable Harold M. Bode, as judge in the above entitled action."

The record does not show when Clark or his attorney first learned that Judge Bode had been assigned to his

---

plished, would constitute such crime and that he does acts toward the commission of the crime which demonstrate unequivocally, under all the circumstances, that he formed that intent and would commit the crime except for the intervention of another person or some other extraneous factor."

[3] Sec. 971.20(5), Stats.:

"(5) The request in sub. (1) may be in the following form:

"STATE OF WISCONSIN,

. . . . County,

. . . . Court

State of Wisconsin

  Vs.

. . . (Defendant)

"Pursuant to s. 971.20 the defendant requests a substitution for the Hon. . . . as judge in the above entitled action.

 "Dated . . .

   ". . . . . . (Signed by defendant personally)"

case.[4] The information (dated August 3 and filed on August 6) is a printed form completed by typewriter except for two inked insertions: roman numeral "II" was inserted in the caption of the information which states "Circuit Court, Branch ———";[5] and the case number was inserted in the appropriate blank on the form to the right of the names of the parties. We do not know when either of these inked insertions was made or whether Clark or his attorney was notified when this information became available. The motion to quash (filed on August 6) contains the case number but not the circuit court branch number.

The record is silent as to what happened to the request for substitution. There is nothing in the record showing whether Judge Bode even considered the request or whether he granted or denied it. At no time subsequent to the filing of the request for substitution does the record show that Clark or his attorney communicated with the clerk of court[6] or with Judge Bode about his request

---

[4] Clark's brief states that the case was assigned to Judge Bode in Circuit Court, Branch II, under the tab system on August 14, 1976. This information is not supported in the record and appears to be incorrect. Clark filed his request for substitution of Judge Bode on August 11 and therefore on August 11, Clark knew (or thought he knew) that Judge Bode had been assigned to his case.

[5] The designation of Branch II was tantamount to assigning Judge Bode to the case, since Judge Bode presided over Branch II and Judge Morton over Branch I, the only two branches of Kenosha County Circuit Court at that time. 1975 Wis. Stats. Appendix, p. 2.

[6] The clerk's role is set forth in sec. 971.20(4), Stats. 1975, which provides that "when a judge is disqualified under this section, the clerk of circuit court shall request assignment of another judge pursuant to s. 251.182."

See sec. 971.20(4), Stats. 1977, which is substantially similar and provides:

"(4) When a judge is substituted under this section, the clerk of circuit court shall request assignment of another judge under s. 751.03."

for substitution or that Clark objected to Judge Bode's presiding at any proceeding. What is clear in the record is that Judge Bode presided at a hearing on the motion to quash on September 22, 1976; at the arraignment on September 27, 1976, at which Clark pleaded not guilty and requested a jury trial; at a hearing on November 29, 1976, on Clark's motions for discovery and for bill of particulars; at the trial before a jury beginning December 7, 1976; and at the hearing on March 7, 1977, on Clark's motion for a new trial.

Clark, on appeal, asserts that because his request for substitution was not honored, pursuant to sec. 971.20, Stats., Judge Bode was "without authority" to conduct proceedings in his case and that his conviction is therefore a nullity.

The State argues that because sec. 971.20, Stats., requires the request to be "made before making any motion or before arraignment," Clark's request for substitution was not timely made and Judge Bode had authority to act. The parties agree that Clark's request for substitution was filed after his motion to quash the information and before the arraignment.

Clark maintains that the word "or" in sec. 971.20(1) connotes the alternative and that sec. 971.20(1) should be read to permit the defendant an option to file the request either before a motion or before arraignment. He argues that the arraignment should be the cut-off time for the request. Thus a request made after motion but before arraignment would be timely. Clark offers no reason justifying the adoption of this strained reading of the statute.

Secs. 801.58(2), Stats., which regulates substitution of a judge in a civil action or proceeding, and 299.205(2), Stats., which regulates substitution of a judge in a small claims action, provide that the named judge shall request assignment of another judge. Sec. 801.59, Stats., requires the clerk of circuit court to notify all parties when another judge has been assigned under sec. 751.03, Stats.

The minutes of the Committee of the Judicial Council which participated in the drafting of sec. 971.20, as part of the extensive revision of the Criminal Code, supports this interpretation of the statutory language:

". . . Mr. Croak further suggested that the request shall be made at arraignment or prior to the filing of any motions other than the motion for a continuance. . . . Mr. Platz asked if the district attorney, for example, would be foreclosed from making a request if the defense has slipped in a bunch of motions before he has made his request. Mr. Croak suggested that a request may not be made by any party who has filed motions, except for continuance. It was decided to add language to the effect that: The request shall be made at or prior to arraignment but in no event may a party make such a request after making an oral or written motion except for good cause shown." (Drafting file in Legislative Reference Bureau for Ch. 255, Laws of 1969, Minutes of Meeting September 13, 1968.)

The drafting file does not show why the language suggested at the committee meeting was not used in the statute.

One goal of the statute is that the request be filed and acted upon before substantive or procedural issues of the case are raised or considered. *Cf. Bahr v. Galonski,* 80 Wis.2d 72, 87, 257 N.W.2d 869 (1977). To achieve this goal the statute should be interpreted to require the defendant to file his request prior to the time he files motions relating to the case.

Whether we look at the very words of the statute or at the draftsmen's notes or at the purpose of the statute, we conclude that sec. 971.20, Stats., does not mean what Clark says it means. We conclude that sec. 971.20 requires the defendant to file his request for substitution before the filing of a motion or before arraignment, whichever event occurs first.

The question to which we turn next is whether Clark's motion to quash which was filed prior to the request for substitution should be viewed as a motion within sec. 971.20 which renders the subsequent filing of the request untimely. On several occasions, recognizing the vagaries of practice and procedure, we have stated that sec. 971.20 must be applied in a reasonable manner to obtain its objective and to give effect to the predominant intent of the legislature expressed in sec. 971.20, *i.e.*, "to afford a substitution of a new judge assigned to the trial of that case . . . so that a person's right to a fair trial shall be preserved." *Baldwin v. State,* 62 Wis.2d 521, 529, 530, 532, 215 N.W.2d 541 (1974). *See also Meverden v. State,* 258 Wis. 628, 634, 46 N.W.2d 836 (1951). Our prior cases have attempted to apply the statutory time limit in sec. 971.20 in a way that will inhibit a defendant's use of the request to disrupt orderly calendaring or to delay the scheduled trial[7] and at the same time, in

---

[7] The court has found requests for substitution untimely when the defendant filed a request for substitution, or an affidavit of prejudice under the prior statute, (a) seven days after arraignment, (b) the day before trial was to begin, and (c) months after arraignment. *State v. Bell,* 62 Wis.2d 534, 215 N.W.2d 535 (1974); *State v. Beaty,* 57 Wis.2d 531, 205 N.W.2d 11 (1973); and *Sprang v. State,* 63 Wis.2d 679, 218 N.W.2d 304 (1974).

In *State v. Bell,* the court held that a request for substitution filed seven days after arraignment was untimely. In reaching this conclusion, the court stated:

"Of course, every person charged with crime is entitled to a fair trial, which concept includes the right to be tried by an impartial and unbiased judge. This right was put on a constitutional basis in *State ex rel. Mitchell v. Bowman* (1972), 54 Wis.2d 5, 6, 194 N.W.2d 297, where it was stated that 'under the constitution no person, whether a juvenile or an adult, should be tried by a judge if the person involved can prove that the judge is prejudiced against him.' The exercise of the right is subject to reasonable limitations in view of the overall function of the courts to efficiently administer justice. There must be a reasonable time limit within which the right must be exercised if there is to be an or-

a way that will give a defendant a reasonable period of time to request a substitution after he or she learns which judge is assigned to the case.[8] We have viewed the key to the statutory right of substitution as the defendant's ability to exercise his right of substitution intelligently.

As noted previously, in the case at bar, the record is unclear whether Clark knew the name of the assigned judge when he filed the motion to quash. Nor is the date of the assignment of the case to Judge Bode and the date when Clark learned of the assignment of record. The motion to quash was filed on August 6th. Apparently Judge Bode was assigned to the case sometime between August 2 (the bindover) and August 11, the date Clark filed the request for substitution. Clark's request for substitution was filed within nine days of the bindover, within five days after his motion to quash and well before the dates set for arraignment, or for hearings on motions, or for the trial. Recognizing the substitution request as timely under these facts, would give effect to the legislative intent expressed in sec. 971.20 and would not enable a defendant to use the request as a technique to disrupt scheduled calendaring or to delay

derly procedure for the trying of criminal cases. Waiting until the day of trial to assert the right is an unreasonable tactic of defense counsel to delay the trial. Court calendars must have stability. The even flow of court work should not be interrupted by delayed requests for substitution of judge. It was to obviate such problem and to balance the right to a fair trial with the efficient administration of court calendaring that sec. 971.20, Stats., was enacted. This section did two things: (1) Eliminated any necessity for the defendant to actually prove prejudice by the judge by allowing the defendant a substituted judge without stating any reason; and (2) required the request to be made before any motion or before arraignment." *Id.* at 536, 537.

the scheduled trial. However, even if we were to hold that the request for substitution was timely, we would conclude under the facts of this case that Clark withdrew

[8] In *Baldwin v. State*, 62 Wis.2d 521, 530, 531, 532, 215 N.W.2d 541 (1974), we stated:

"A strict construction of sec. 971.20, Stats., would deny in many cases the constitutional right to a fair trial because a defendant is unable at the time of the arraignment to know what judge is to try his case. . . . This interpretation witnesses and gives effect to a predominant intention of the legislature expressed in the section to 'afford a substitution of a new judge assigned to the trial of that case.' The strict construction makes it impossible to obtain the objective of this section and would frustrate the objective of this statute.

"This interpretation finds support in the history of the section. In the judicial committee's comment to sec. 971.20, Stats., reference is made to the Illinois and Montana substitution statutes. Both the Illinois and Montana statutes impose a time limitation within which the substitution request must be made but neither statute phrases the limitation in terms of the arraignment. Both are keyed to the trial date. In Illinois the time limitation is case in terms of days after the case is assigned for trial and the date is set. Montana reaches the same result by designating a time prior to the trial of the case. In both cases, the defendant knows the identity of the judge who is trying the case and can exercise his right intelligently.

"In *Meverden v. State* (1951), 258 Wis. 628, 634, 46 N.W.2d 836, the court construed sec. 356.03(1), Stats. 1947, predecessor of sec. 956.03, Stats. 1967, which itself formed the basis of sec. 971.20 as being an expression of the 'legislative intent . . . [that] a person's right to a fair trial shall be preserved.' The language of sec. 971.20 must apply as reasonably as possible to all cases to attain its object. The right to the substitution of a judge must have a reasonable time limit for its exercise. No objection has been raised that the arraignment as the cut-off date is unreasonable. Even in a multi-branch court, the assignment is made some weeks before an arraignment can be scheduled and so the accused has ample time to decide if he desires a substitution of a judge. One thing which should not be allowed is the disruption of the orderly calendaring and trial of a case by a request on the day of trial or at a time which upsets a trial date."

*See also State ex rel. Akavickas v. County Court of Marathon County*, 77 Wis.2d 297, 298, 252 N.W.2d 386 (1977).

his request. Clark knew no action had been taken on his request yet he did nothing about his request. He did not communicate with the judge or the clerk of court about the status of his request. He made no further motion on the matter of substitution. In his numerous appearances before the judge he was silent about his request. He did not advise the circuit judge that he was proceeding under protest on the ground that the judge had failed to rule on his request.

Although sec. 971.20, Stats. 1975, provides that upon the filing of the request in proper form and within the proper time the judge named in the request has no authority to act further in the case,[9] sec. 971.20 imposes on the judge named in the request for substitution the obligation to determine whether the request is in proper form and within the proper time.[10] It is only if the judge determines that the request is in proper form and was filed within the proper time, that the "judge shall be without authority to act further" and that the statute creates a procedure for assigning a new judge. If the

[9] In *State v. Jackson*, 69 Wis.2d 266, 273, 230 N.W.2d 832 (1975), there was no question of a proper and timely request, and we said "the within request having been filed, no more was required of the trial judge than an acknowledgment of the filing and assigning the case to another judge."

[10] *Cf.* sec. 801.58(2), Stats., which regulates substitution of a judge in a civil action or proceeding and sec. 299.205(2), Stats., which regulates substitution of a judge in a small claims action. Those provisions clearly state that the judge whom the party wishes replaced rules on the validity of the request: "After the written request has been filed, the original [named] judge shall have no further jurisdiction in the action or proceeding except that the judge shall determine if the request is correct as to form and timely filed. If the request is correct as to form and timely filed, the named judge shall be disqualified and shall promptly request assignment of another judge under sec. 751.03."

*See* sec. 971.20(2), Stats. 1977, which allows the judge named in the request to conduct the initial appearance, accept pleas of not guilty and set bail.

judge determines the request is not in proper form or is untimely, the judge must deny the request and continue in the case. The judge's ruling on the form and timeliness of the request is, however, subject to review on appeal from the final judgment[11] or preferably, by the defendant requesting the court of appeals to exercise its supervisory authority.[12] If the circuit judge, contrary to law, refuses to rule promptly on the validity of the request, the defendant should request the court of appeals to exercise its supervisory authority to compel the judge to rule. Clark did not seek an appropriate writ to compel the circuit judge to stop the proceedings, to rule on the request or to reassign the case.

Clark filed a motion to quash, filed a request for substitution, and then proceeded as if no such request for substitution was ever made. We conclude that under these circumstances, his objection to the judge's or clerk's failure to substitute a judge comes too late on appeal.

We note that the result of this case may very well have been different had sec. 971.20(6), Stats. 1977,[13] been in

[11] *See, e.g., State v. Beaty,* 57 Wis.2d 531, 205 N.W.2d 11 (1973), and *Baldwin v. State,* 62 Wis.2d 521, 215 N.W.2d 541 (1974), in which the denial of the request was raised on appeal in this court.

*See* Rule 809.50, 83 Wis.2d xiii, xl, for leave to appeal to the court of appeals from a nonfinal judgment or nonfinal order.

[12] *See State ex rel. Akavickas v. County Court of Marathon County,* 77 Wis.2d 297, 298, 252 N.W.2d 386 (1977), for the use of the writ of prohibition in this court prior to court reorganization. *Cf. In re Interest of DH,* 76 Wis.2d 286, 292, 251 N.W.2d 196 (1977); *see* sec. 752.02, Stats.; Rule 809.51, 83 Wis.2d xiii, xl, relating to the court of appeals; Art. VII, sec. 5, Wis. Const.; Martineau & Malmgren, *Wisconsin Appellate Practice* c. 29 (1978).

[13] Sec. 971.20(6), Stats. 1977, provides:

"(6) Upon the filing of an agreement signed by the defendant in a criminal action or proceeding, by the prosecuting attorney, by the original judge for which a substitution of a new judge has been made, and by the new judge, the criminal action or proceed-

effect at the time of the instant case. Sec. 971.20(6) specifies the procedure to be used for withdrawing the request for substitution and for returning the case to the original judge. The consent of all persons interested is required. The legislature has recognized that once a party files a request, the request is no longer subject only to the control of the party making the motion. The legislature now provides that the request can be withdrawn and the case may be transferred back to the original judge upon the filing of an agreement signed by the defendant, prosecuting attorney, the original judge and the new judge. Because this case arose before sec. 971.20(6), Stats. 1977, was in effect,[14] it was possible for Clark to withdraw the request for substitution unilaterally. Because we construe Clark's conduct in this case as in effect constituting a unilateral withdrawal of the request for substitution, we conclude that Judge Bode has authority to preside in the case.[15]

## II.

Clark argues that the evidence adduced at trial was not sufficient to support the defendant's conviction for

ing and pertinent records shall be transferred back to the original judge."

[14] Subsection 6 was created by Laws of 1977, c. 135, sec. 18, effective November 1, 1977.

[15] Defense counsel argued on the motion for a new trial that certain conduct of the trial judge was prejudicial.

Counsel alleges that the judge was reading material during opening statements (the judge's reading the paper does not appear on the record nor does any objection to this conduct appear). The defense asserts that it was prejudiced by the judge recessing the trial to attend a tax seminar and calling a recess in the middle of the defense attorney's closing argument. Without commenting on whether the judge acted in the manner alleged or on the appropriateness of such conduct if proved, we conclude this conduct of the circuit court if proved was not such that would require a reversal of the conviction on the ground that Clark was denied his constitutional right to a fair trial.

attempted kidnapping, in that the evidence was insufficient to show that the defendant had the intent to commit the crime of kidnapping and that he took steps toward the commission of the crime of kidnapping that demonstrated unequivocally that he would have committed the crime except for the intervention of another person or some other extraneous factor.[16]

We have stated the test for determining the sufficiency of the evidence as follows:

" ' ". . . the evidence adduced, believed and rationally considered by the jury, was sufficient to prove the defendants' guilt beyond a reasonable doubt. . . . The test is not whether this court is convinced of the guilt of the defendant beyond a reasonable doubt but whether this court can conclude the trier of the facts could, acting reasonably, be convinced to the required degree of certitude by the evidence which it had a right to believe and accept as true.

" ' ". . . Stating the rule conversely for the sake of clarity, the evidence when considered most favorably to the state and the conviction must be so insufficient in probative value and force that it can be said as a matter of law that no trier of facts acting reasonably could be convinced to that degree of certitude which the law defines as 'beyond a reasonable doubt.' " . . .' *Krueger v. State,* 84 Wis.2d 272, 282, 283, 267 N.W.2d 602 (1978)." *State v. Dix,* 86 Wis.2d 474, 482, 273 N.W.2d 250 (1979).

The facts of the attempted kidnapping emerged at trial through the testimony of the victim, police officers and Clark.

Karen Braun, the victim, testified that on June 18, 1976, at approximately 8 p.m., she was walking toward her home when she noticed a car moving slowly down the street keeping pace with her. The driver of the

---

[16] For the statutory definition of kidnapping, *see* sec. 940.31(1), Stats., quoted at note 1, *supra.* For the statutory definition of attempt *see* sec. 939.32, Stats., quoted at note 2, *supra.*

car stopped and asked, "Do you know where Dr. Ashley lives?" She said she did not know. He then pointed a gun at her through his open car window and said, "Get in the car." The distance between the car and the sidewalk was about twelve feet. She said, "No," turned south and kept walking. The victim identified Clark as the man who pointed the gun. She acknowledged that Clark did not get out of his car or physically take hold of her.

Kenosha Police Officer William Schmitz testified that on June 20, 1976, Clark executed a consent to search and that a loaded .22 caliber handgun was removed from his closet at his residence.

Kenosha Police Officer Rudy Botz testified that he advised Clark of his constitutional rights on June 20, 1976, and took a statement from him. Botz identified a tape recorded statement given by Clark on June 20, 1976. In it, Clark stated that his reason for demanding that the victim enter his car was "probably for sex."

Clark testified in his own behalf at trial and admitted telling Officer Botz that the reason he stopped the victim and pointed a gun at her was "probably for sex." He explained that he was intoxicated; that he did not intend to kidnap anyone on June 18, 1976; that he did did not know what he would do with the girl if she got into the car; and that he was lonely and wanted to talk with someone.

The defense produced Gordon Lovelase, who corroborated Clark's testimony that Clark was intoxicated on June 18, 1976, and suggested that Clark's handgun was broken on that date.

Clark first argues that the State failed to prove him guilty of attempted kidnapping because the evidence is insufficient to show that he had the specific intent to perform acts and attain a result which, if accomplished, would constitute the crime of kidnapping.

The instruction stated that the jury must find that the defendant's intent was "to cause [the victim] to be held to service against her will." The requisite intent may be inferred from the circumstances and the defendant's acts. Indeed, in most cases, the sole evidence of intent is confined to the circumstances and the conduct of the accused. *Adams v. State,* 57 Wis.2d 515, 519, 204 N.W.2d 657 (1973); *Le Barron v. State,* 32 Wis.2d 294, 298, 299, 145 N.W.2d 79 (1966); *Lhost v. State,* 85 Wis.2d 620, 629, 271 N.W.2d 121 (1978); *Johnson v. State,* 85 Wis.2d 22, 32, 270 N.W.2d 153 (1978).

The trier of fact looks at the totality of the circumstances to determine the defendant's intent. *Johnson v. State,* 85 Wis.2d 22, 33, 270 N.W.2d 153 (1970); *Jaworski v. State,* 74 Wis.2d 134, 137, 246 N.W.2d 137 (1976). The evidence was that Clark followed the victim in a car; got within about 12 feet of her; pointed a gun at her; and ordered her into the car. Clark stated that he stopped the victim "probably for sex." He attempted to refute this statement when he testified. However, trustworthiness and credibility are for the jury to determine. *State v. Verhasselt,* 83 Wis.2d 647, 659–660, 266 N.W.2d 342 (1978); *State v. Bergenthal,* 47 Wis.2d 668, 678–679, 178 N.W.2d 16 (1970).

In *Jacobs v. State,* 50 Wis.2d 361, 365, 366, 184 N.W.2d 113 (1971), the defendant entered a store, pointed the gun at the proprietor and demanded money. The proprietor said he had no money and told the defendant to go ahead and shoot. The defendant left the store. The court held the evidence was sufficient to support a conviction for attempted robbery. The court found the inference that the defendant intended to hold up the storekeeper reasonable, in fact the only reasonable inference.

It cannot be said that the evidence in the case at bar is insufficient for a trier of fact to have concluded that defendant intended to kidnap the victim, that is, intended by threat of imminent force to seize or confine her without her consent and to cause her to be held for service against her will.

Second, Clark argues that the State failed to prove acts which demonstrate unequivocally that he would commit the crime except for the intervention of another person or some other extraneous factor. *State v. Dix,* 86 Wis.2d 474, 482, 273 N.W.2d 250 (1978). As we said in *Berry v. State,* 90 Wis.2d 316, 326, 280 N.W.2d 204 (1979) :

"The defendant's conduct must pass that point where most men, holding such an intention as the defendant holds, would think better of their conduct and desist."

The act must demonstrate unequivocally that the actor would have committed the crime except for the intervention. *See also* La Fave & Scott, *Criminal Law,* sec. 59 (1972) ; Note, *Criminal Law—Attempts—The Damms Case—The General Attempt Statute,* 1960 Wis. L. Rev. 516, 527, n. 52.

Pointing the gun and telling the victim to get into the car were unequivocal acts, accompanied by intent, sufficient to complete the crime of attempted kidnapping. Verbal compulsion, along with the pointing of a weapon, would have accomplished the confinement or seizure if the attempt had not been stopped. Clark had done everything necessary to insure the commission of the crime intended. Clark was prevented from carrying out the crime by circumstances beyond his control, namely, the

victim's resistance. We have said that the victim's resistance constitutes an extraneous factor within the contemplation of sec. 939.32(2), Stats. *Huebner v. State,* 33 Wis.2d 505, 520, 147 N.W.2d 646 (1967). Clark should not escape punishment because of the fortuitous circumstance that by reason of some fact unknown to him, namely that the victim would resist, it would be impossible to effectuate the intended result.

This court has stated:

> "Sound public policy would seem to support the majority view that impossibility not apparent to the actor should not absolve him from the offense of attempt to commit the crime he intended. An unequivocal act accompanied by intent should be sufficient to constitute a criminal attempt. In so far as the actor knows, he has done everything necessary to insure the commission of the crime intended, and he should not escape punishment because of the fortuitous circumstances that by reason of some fact unknown to him it was impossible to effectuate the intended result." *State v. Damms,* 9 Wis.2d 183, 190, 191, 100 N.W.2d 592 (1960).

*See also Jacobs v. State,* 50 Wis.2d 361, 367, 184 N.W.2d 113 (1971).

Viewing the evidence in the light most favorable to the jury's finding, *Bautista v. State,* 53 Wis.2d 218, 223, 191 N.W.2d 725 (1971), we conclude that the evidence was sufficient to prove Clark's guilt beyond a reasonable doubt.

### III.

Clark objects to the jury instruction on attempted kidnapping because the jury was instructed that Clark may be found guilty of attempted kidnapping if the State proved that the defendant intended to commit the crime

of kidnapping, which is defined as "seizing or confining" the victim.[17]

The record in this case does not contain a transcript of the instructions actually given to the jury. An affi-

[17] The jury instruction on attempted kidnapping was as follows:

"The crime of attempt, as defined in Sec. 939.32 of the Criminal Code of Wisconsin, is committed by one who, with intent to perform acts and attain a result which, if accomplished, would constitute a crime, does acts toward the commission of the crime which demonstrate unequivocally, under all of the circumstances, that he had formed that intent and would commit the crime except for the intervention of another person or some other extraneous factor.

"The defendant in this case is charged with attempted kidnapping.

"Before the defendant may be found guilty of attempted kidnapping, the State must prove by evidence which satisfies you beyond a reasonable doubt that there were present the following two elements of this offense:

"First, that the defendant intended to commit the crime of kidnapping in violation of Sec. 940.31(1)(b) Wis. Stats.

"Second, that the defendant did acts which demonstrate unequivocally, under all of the circumstances, that he intended to and would have committed the crime of kidnapping, except for the intervention of another person or some other extraneous factor.

"The first element requires that the defendant intended to commit the crime of kidnapping. To enable you to determine whether the defendant intended to commit a kidnapping, it is necessary that you understand what constitutes kidnapping under Sec. 940.31 (1)(b) Wis. Stats.

"The crime of kidnapping as defined in Sec. 940.31(1)(b) is committed by one who by force or threat of imminent force seizes or confines another without her consent and with intent to cause her to be held to service against her will.

"The crime charged against the defendant in this case, however, is not kidnapping as just defined, but an attempt to commit the crime of kidnapping.

"The second element of attempted kidnapping requires that the defendant did acts toward the commission of the crime of kidnapping which demonstrate unequivocally, under all of the circumstances, that he intended to and would have committed the crime of kidnapping except for the intervention of another person or some other extraneous factor.

davit by defense counsel avers that he was advised by
the court reporter that the judge directed the reporter
not to type a transcript of the instructions read at trial

"This element requires that the defendant not only did acts
which demonstrate that the defendant intended to commit kidnapping but that he did acts which under the circumstances demonstrate unequivocally that he intended and would have committed
the crime of kidnapping except for the intervention of another
person or some other extraneous factor.

"By 'unequivocally' is meant that no other inference or conclusion can reasonably and fairly be drawn from the defendant's acts,
under the circumstances.

" 'Another person' means anyone but the defendant (actor) and
may *include the intended victim.*

"An 'extraneous factor' is something outside the knowledge of
the defendant (actor) or outside of his control, which prevented
the completion of the crime or caused the defendant (actor) to
desist in his commission of the crime.

"If you are satisfied beyond a reasonable doubt from the evidence in this case that the defendant intended to commit the crime
of kidnapping, and that he performed acts toward the accomplishment of such intent to commit a kidnapping which demonstrate
unequivocally under all of the circumstances, that he had formed
the intent to commit kidnapping, and would have committed the
crime of kidnapping except for the intervention of another person
or some other extraneous factor, then you should find the defendant guilty of attempted kidnapping.

"If, however, you are not so satisfied, then you must find the
defendant (not guilty) (not guilty of attempted kidnapping).

"Before a defendant may be found guilty of kidnapping the
State would have to prove by evidence which would satisfy you
beyond a reasonable doubt that the following three elements of
the offense of kidnapping as contained in Sec. 940.31(1)(b) Wis.
Stats. were present:

"First, that the defendant seized or confined the person of Karen
Kellingstad.

"Second, that said seizing in confining of the person of Karen
Kellingstad was by force or threat of imminent force.

"Third, that said seizing or confining of the person of Karen
Kellingstad was without the consent of Karen Kellingstad.

"Fourth, that the defendant had the intent upon seizing said
Karen Kellingstad to hold her to service against her will."

because the record contains the jury instructions proposed by Clark and by the State. This omission in the record is contrary to the statutory direction contained in secs. 805.13 (1) and 757.57 (2), Stats.

"805.13   Jury instructions; form of verdict.
" (1) STATEMENTS BY JUDGE. After the trial jury is sworn, all statements or comments by the judge to the jury or in their presence relating to the case shall be on the record."

"757.57   Transcripts. . . .
" (2) In any criminal action or proceeding the court may, and in case of sentence of any person to the state prisons or to a county house of correction for more than 6 months, the court shall order a transcript of the testimony and proceedings to be made and certified by the reporter and filed with the clerk of court, and a certified duplicate of such transcript to be filed with the warden or superintendent of the institution to which the person is committed. The cost of such transcript, at the rate of 50 cents per 25-line page for the original and 15 cents per 25-line page for the duplicate, shall be paid for by the county treasurer upon the certificate of the clerk of court. In case of application for a pardon or commutation of sentence such duplicate transcript shall accompany the application."

The statutes mandate the recording and transcription of the instructions, as they are read by the trial court to the jury. The statutes should be followed. A verbatim record of the instructions given to the jury is essential for proper appellate review of the instructions. However, in the instant case the record is sufficient to review because the parties agree that the proposed instructions which are part of the record were actually read to the jury by the trial court.[18]

[18] Ordinarily the absence of a written record forecloses review of the question. *Peterson v. State*, 73 Wis.2d 417, 425, 243 N.W.2d 491 (1976); *Smith v. State*, 65 Wis.2d 51, 54, 221 N.W.2d 687

Clark's objection to the instructions on attempted kidnapping is that Clark had been charged in the information with attempting to seize the victim, while the instructions listed the elements of kidnapping in the disjunctive "seize or confine." Clark contends that the State cannot charge one form of kidnapping in the information and go to the jury with two forms.

However, the information did cite the correct statute, sec. 940.31(1)(b), Stats. Clark does not claim he was impeded in the preparation of his defense by the failure of the information to repeat the full wording of the statute, or that he did not have notice of the offense with which he was charged. Under these circumstances we conclude the information is adequate to confer jurisdiction and the instructions need not be limited to the exact language of the information. This court has stated:

" '. . . the failure to specifically allege a material element of the crime within the factual statement contained in the information does not *ipso facto* render the information void, if the statute which contains the substantive elements of the offense is cited therein. The statutory cite is incorporated, the defendant is adequately apprised of the nature and substance of the charge, and thus is not prejudiced by the omission from the factual statement of a substantive element of the alleged violation.' [*Schleiss v. State*, 71 Wis.2d 733, 738, 239 N.W.2d 68 (1976).]

"The similar cases of *Clark v. State* (1974), 62 Wis.2d 194, 199, 200, 214 N.W.2d 450; *State v. Nowakowski* (1975), 67 Wis.2d 545, 227 N.W.2d 697; and *State v. Bachmeyer* (1945), 247 Wis. 294, 19 N.W.2d 261, were cited and relied upon, with the observation that in all of these as well as in *Schleiss* there was no evidence that

(1974). However where, as in the instant case, the proceedings can be reconstructed and the parties agree as to the reconstruction there may be a sufficient record for review. *Johnson v. State*, 75 Wis.2d 344, 369, 249 N.W.2d 593 (1977).

the defense had been prejudiced in any way by the failure of the information to set forth every element of the crime." *Lambert v. State*, 73 Wis.2d 590, 602, 243 N.W.2d 524 (1976).

Clark cites only one case, *Champlain v. State*, 53 Wis.2d 751, 756, 193 N.W.2d 868 (1972), to support his objection to the instructions charging what he calls separate offenses. His reliance on *Champlain* is misplaced. In *Champlain* the defendant was charged with two offenses in the information, burglary with intent to steal, and burglary with intent to commit a felony. This court has recognized these as separate offenses, and they are so treated in the standard jury instructions. We held that the instructions in *Champlain* intermixed burglary with intent to steal and burglary with intent to commit a felony and were "so misleading" that the real issue had not been tried. We reversed the conviction and granted a new trial in the interest of justice. In the case at bar there is only one offense, attempted kidnapping. The jury was instructed on the one offense. It is arguable that there are two means by which the offense can be committed—seizing the victim or confining the victim—but these acts can also be viewed as not distinct and separate acts but rather as analagous and as a continuing course of conduct. In the case at bar, defense counsel does not dispute that Clark did all the acts charged; he challenges only that Clark had the mental state required for the crime. Under these circumstances, the instruction was not misleading; the real issue was tried, and there was no possibility of prejudice through lack of unanimity. *Cf. United States v. Pavloski*, 574 F.2d 933 (7th Cir. 1978).

## IV.

Clark asserts that the trial court erred in denying him credit on his sentence for the time spent at Winnebago

Mental Health Institute as a result of his pre-sentence commitment ordered by the circuit court pursuant to sec. 975.02, Stats.[19] After the filing of briefs in this case, the legislature enacted sec. 973.155, Stats., which gives a convicted offender credit toward service of his sentence for all days spent in custody in connection with the course of conduct for which sentence was imposed.

"Sec. 973.155 **Sentence credit.** (1)(a) A convicted offender shall be given credit toward the service of his or her sentence for all days spent in custody in connection with the course of conduct for which sentence was imposed. As used in this subsection, 'actual days spent in custody' includes, without limitation by enumeration, confinement related to an offense for which the offender is ultimately sentenced, or for any other sentence arising out of the same course of conduct, which occurs:
"1. While the offender is awaiting trial;
"2. While the offender is being tried; and
"3. While the offender is awaiting imposition of sentence after trial.
"(b) The categories in par. (a) include custody of the convicted offender which is in whole or in part the result of a probation or parole hold under s. 57.06(3) or 973.10(2) placed upon the person for the same course of conduct as that resulting in the new conviction.
". . .
"(3) The credit provided in sub. (1) shall be computed as if the convicted offender had served such time in the institution to which he or she has been sentenced.

---

[19] Sec. 975.02, Stats., provides:
"975.02 **Discretionary commitment.** If a person is convicted of any sex crime other than those specified, the court may commit him to the department for such a presentence examination. The court and all public officials shall make available to the department upon its request all data in their possession in respect to the case. 'Sex crime' as used in this section includes any crime except homicide or attempted homicide if the court finds that the defendant was probably directly motivated by a desire for sexual excitement in the commission of the crime; and for that purpose the court may in its discretion take testimony after conviction if necessary to determine that issue."

" . . .

"(5) If this section has not been applied at sentencing to any person who is in custody or to any person who is on probation or parole, the person may petition the department to be given credit under this section. Upon proper verification of the facts alleged in the petition, this section shall be applied retroactively to the person. If the department is unable to determine whether credit should be given, or otherwise refuses to award retroactive credit, the person may petition the sentencing court for relief. This subsection applies to any person, regardless of the date he or she was sentenced."

Sec. 973.155, Stats. 1977, became effective on May 17, 1978, and applies retroactively to those offenders still in custody or on probation or parole who have not received credit.

"NOTE: New s. 973.155 of the statutes is created and provides that a convicted offender shall be given credit towards the service of his or her sentence for 'all days' spent in custody in connection with the course of conduct for which the sentence was imposed. Such credit is intended to cover all time spent in custody while awaiting trial, during trial and awaiting imposition of sentence after trial. In addition, such credit would include the time a parolee or probationer spends in custody pending conviction and sentencing on new charges."

Clark is entitled to credit for the days he spent in custody at Winnebago prior to sentencing. His remedy to obtain credit under sec. 973.155(5), Stats., is to petition the Department of Health and Social Services. *Larson v. State*, 86 Wis.2d 187, 200, 271 N.W.2d 647 (1978).

For the reasons stated herein, we affirm the judgment and orders.

*By the Court.*—Judgment and orders affirmed.